STEARNS and another, Respondents, vs. JENNINGS, Appellant.

*April 19—May 8, 1906.*

*Real-estate agents: Commissions: Contract as to order of sales.*

Where the contract under which a real-estate agent was employed to find purchasers for lots expressly provided that they should be sold only in a certain order, he cannot, in an action on the contract, recover his commission for finding a purchaser for certain of the lots while others which were first to be sold remained unsold, even though the owner's refusal to sell to such purchaser was not based on that ground.

APPEAL from a judgment of the circuit court for Green county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

This action was commenced in justice's court, and from the judgment in favor of the plaintiffs therein the defendant appealed to the circuit court. The complaint as amended, so far as the question here involved is concerned, alleges, in effect, that in and by a contract in writing executed by the plaintiffs and the defendant December 18, 1903, the plaintiffs were to receive two per cent. of the sum of any sale for their services in finding a purchaser or purchasers for the real estate therein described or a part thereof; that July 29, 1904, the plaintiffs did find a purchaser for lots 6, 7, and 8, therein mentioned, for the price of $1,800, being $100 more than called for by the contract; that the purchaser so found was then ready, able, and willing to comply with the terms of said contract and pay the purchase price of said lots in cash on the delivery of the deed; that July 30, 1904, the defendant refused to make such deed or to fulfil her contract, and has ever since so refused; that by reason of the facts so alleged the defendant is justly indebted to the plaintiffs on account of said sale in the sum of $36, for which the plaintiffs demand judgment.

The defendant by way of answer alleges, in effect, that before the plaintiffs or either of them had found a purchaser for any of the lands described in the contract, the plaintiffs and the defendant mutually agreed that said contract be and the same was then and there terminated and each of the parties thereto mutually released from the obligations thereof; and, further answering, the defendant denies each and every allegation of the complaint not therein so specifically admitted or denied.

At the close of the trial it was stipulated in open court that a trial by jury be waived and the case be tried by the court, and that the court might find that said written contract had not been rescinded.

Omitting what is irrelevant upon this appeal, the court, at the close of the trial, found as matters of fact in effect: (1) That since prior to December 18, 1903, the plaintiffs have been copartners and real-estate agents at Monroe. (2) That December 18, 1903, the plaintiffs were employed by the defendant to find for her a purchaser or purchasers for lots 1, 2, 3, 4, 5, 6, 7, and 8, in block 29, Tallman's addition to the city of Monroe; that such contract of employment was in writing and duly executed by both parties thereto. (3) That the prices, terms, and conditions of the sale of said lots were specified in said written contract as follows: "For lots 1, 2, and 3, taken as a whole, the sum of $1,600; for lots 2 and 3, the sum of $1,200; for lots 4 and 5, the sum of $5,000; for lots 6, 7, and 8, taken as a whole, the sum of $1,700; for the south half of 6, 7, and 8, the sum of $1,000; for the north half of 6, 7, and 8, the sum of $800; for an acre off the east side of outlot 36, the sum of $1,000; for the next acre adjoining, the sum of $1,000, *the lots to be sold only in the order they are enumerated above.*" (4) That it is also provided in and by said written contract that the defendant will execute to the purchaser found by the plaintiffs a warranty deed to said real estate, upon the purchaser complying with the said terms of sale, and that she will pay the plaintiffs, as their commission and compensation for finding "the purchaser for said real estate, or a part thereof, two per cent. of the sum of any sale." (5) That it is also provided in said written contract that the right of said agents to demand and receive said commission upon any sale or exchange of said real estate shall be denied in the "following instances, and no other," to wit: Should the defendant sell or exchange said real estate for the full value herein named without any assistance, directly or indirectly, from the plaintiffs, no commission or compensation whatever shall be charged or collected by them. That this contract may be canceled by the defendant at any time after three-months from the date here-

of, by giving to the plaintiffs thirty days' written notice of her desire to have the same canceled. (6) That the plaintiffs with reasonable diligence and on July 29, 1903, and while said contract was in full force, procured one L. H. Gapen to make a written offer of $1,800 for lots 6, 7, and 8, which was $100 more than the price for said lots specified in said contract; that said Gapen was ready, willing, and able to perform on his part; that the defendant refused to accept said offer, and rejected the same; that such refusal of such offer was not made because of the fact that lots 1, 2, 3, 4, and 5 had not been sold and were then unsold. (7) That the plaintiffs did not succeed in finding purchasers for any of said lots except for 6, 7, and 8 as aforesaid; that the defendant gave written notice to the plaintiffs July 30, 1904, of her desire to have said contract of agency canceled, and that the same expired according to its terms in pursuance to such notice August 31, 1904; that said contract had not been rescinded or canceled by mutual agreement of the parties prior thereto, but was in full force until August 31, 1904.

As conclusions of law the court found, in effect, that upon the delivery of the offer of said Gapen to the defendant and her rejection thereof the defendant became indebted to the plaintiffs in the sum of $36 as and for commission, and that they are entitled to judgment for said amount with costs to be taxed, and ordered judgment to be entered in accordance with such findings. From the judgment so entered the defendant appeals.

*Colin W. Wright,* for the appellant.

*P. J. Clawson,* for the respondents.

CASSODAY, C. J. The recovery by the plaintiffs against the defendant can be sustained, if at all, only on the ground that they were entitled by the terms of the contract to a commission of two per cent. of the sum of $1,800 offered by the purchaser found by them for lots 6, 7, and 8. This must be

so, because the complaint is based upon the contract, and the cause of action therein alleged is for a commission which it is claimed the defendant agreed to pay by the express terms of the contract. There is no claim that at the time of finding the purchaser the contract had been changed or modified in any particular, and there is no attempt to reform the contract. On the contrary, it was stipulated by the parties that at that time the contract had not been rescinded. There is no pretense that the plaintiffs recovered by virtue of any agreement except the one embodied in the contract. The denial in the answer put in issue the right of the plaintiffs to recover under the contract. The decision of the case must turn upon the construction to be given to the written contract, the essential portions of which are embodied in the findings of the court above set forth and need not be here repeated.

To appreciate the significance of the contract it may be well to understand not only the language employed but also the situation of the premises. The eight lots mentioned in the findings, taken together and as a whole, were bounded on the north by George street, on the west by Adams street, on the south by Tallman street, and on the east by "outlot 36" mentioned in the second and seventh findings. Lots 1, 2, and 3, numbered from the east to the west, front to the north on George street. Lots 6, 7, and 8, numbered from the west to the east, front to the south on Tallman street. Lots 4 and 5 are between the two groups of lots mentioned, and both front to the west on Adams street. Lot 4 is bounded on the north by lots 1, 2, and 3, and on the south by lot 5; and lot 5 is bounded on the north by lot 4 and on the south by lots 6, 7, and 8. The defendant's house is situated on the line between lots 4 and 5, and fronts west on Adams street, and her barn is situated on lot 8. There was no authority in the contract for selling any of the eight lots mentioned, except in groups. The plaintiffs were thereby authorized to sell "lots 1, 2, and 3,

taken as a whole," for the sum therein named, or lots 2 and 3 for the sum therein named, but there was no price named and no authority given to sell lot 1 alone. So the plaintiffs were thereby authorized to sell "lots 4 and 5" together, upon which the defendant resided, for the sum therein named. So they were thereby authorized to sell "lots 6, 7, and 8, taken as a whole," for the sum therein named; or the south half of those three lots, or the north half of those three lots, for the sums respectively therein mentioned. Following such authority in the contract is this significant stipulation therein: "The lots to be sold *only in the order* they are enumerated above." This language is plain, and effect must be given to it if possible. It is very evident from the language thus employed that the purpose was not to give authority to sell the homestead while lots 1, 2, and 3, taken as a whole, or at least 2 and 3, remained unsold. So the manifest purpose was not to allow the sale of 6, 7, and 8 as a whole, or the north or south half thereof, while the homestead remained unsold. True, the defendant agreed in and by the contract to pay to the plaintiffs, "as their commission and compensation for finding the purchaser for said real estate, *or a part thereof,* two per cent. of the sum of *any sale.*" But this manifestly means "any sale" thus authorized by the contract, and not any sale made in violation of such express stipulation in the contract. We find no ambiguity, much less repugnancy, in the provisions of the contract thus referred to. The same is true in respect to the provision of the contract reserving to the defendant the right to "sell or exchange said real estate for the full value" therein "named, without any assistance, directly or indirectly, from" the plaintiffs, and without paying them any commission or compensation on account of such sale or exchange made by the defendant herself. The sale by the defendant of the "acre on the east side of outlot 36" was sanctioned by the trial court under the provision of the contract last referred to. True, the trial court found that the

defendant's refusal to accept the written offer made by Gapen to purchase lots 6, 7, and 8, and pay therefor $1,800, was not made because of the fact that lots 1, 2, 3, 4, and 5 had not been sold and were then unsold. But such failure of the defendant to reject such offer on that ground did not give to the plaintiffs a right of action under the contract in violation of the express terms of the contract.

We must hold that by the express stipulation in the contract the plaintiffs had no authority to sell lots 6, 7, and 8 while lots 1, 2, 3, 4, and 5 remained unsold; and hence that the plaintiffs have failed to prove any cause of action against defendant.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.