ROBERTS, Respondent, vs. GOODLAD and others, imp.* Appellants.

*February 8—April 30, 1918.*

*Real-estate brokers: Unauthorized employment: Liability for commission: Written contract: Contemporaneous oral agreement: Evidence.*

1. Three brothers who, without authority, assumed to act for other brothers and sisters in employing a real-estate broker to sell a farm belonging to them all, were personally liable for the whole commission of the broker, where his employment was not assented to or ratified by the others.

2. A finding by the jury that after defendants had made a written contract with a broker it was agreed orally that he should receive a commission larger than that stated in the writing, is *held* not to be sustained by the evidence, which showed only loose or casual talk between the broker and one of the defendants, practically contemporaneous with the writing.

APPEAL from a judgment of the county court of Iowa county: ALDRO JENKS, Judge. *Modified and affirmed.*

Action by a real-estate agent to recover commissions for finding a purchaser of a farm of 290 acres. The action was tried before a jury. It appeared that the farm was owned by ten brothers and sisters (adults) subject to the dower and homestead rights of their mother, Mary Goodlad. Three of the brothers (the appellants here) made a written agreement with the plaintiff January 11, 1916, in which they agreed, on behalf of themselves and the other owners, that the plaintiff should have the exclusive sale of the farm at the

price of $16,000, of which $1,500 was to be in cash and the balance in specified deferred payments, plaintiff to receive a commission of three per cent. for his services.   The plaintiff claims that immediately after this written agreement was executed an oral agreement was made between himself and the three appellants (acting for all the owners) by which it was agreed that the plaintiff, in addition to the three per cent., should have as commission all money or property received on the sale in excess of $16,000.

Through the efforts of the plaintiff a purchaser of the farm was found in the person of one Thomas, to whom the owners sold the farm on contract for $18,000, of which sum $2,500 was represented by a house and lot traded in.

The jury returned the following special verdict:

"After the written agreement of January 11, 1916, was made and entered into, was it agreed between the plaintiff and the defendants *Richard Goodlad, C. H. Goodlad,* and *Ernest Goodlad,* that the plaintiff, in addition to the commission of three per cent. provided for in the written contract, should also have as compensation for making a sale of the Goodlad farm all moneys or property received on such sale in excess of $16,000 ?   *A.* Yes.

"After the defendants, *Richard Goodlad, C. H. Goodlad,* and *Ernest Goodlad,* had employed the plaintiff to find a purchaser for the Goodlad farm, they assuming to act on behalf of all the owners thereof, was such employment of the plaintiff communicated by them or some of them to the other defendants herein and assented to and ratified by them?   *A.* No.

"Was the Goodlad farm sold by the defendants to William H. Thomas for the sum of $18,000 by and through the acts and services of the plaintiff in procuring him as a purchaser thereof ?   *A.* Yes."

Judgment was rendered against the three defendants who signed the written contract for $2,480, and the action was dismissed as to the remaining defendants, whereupon the three defendants aforesaid appealed.

*F. K. Shuttleworth* of Madison, for the appellants.

For the respondent there was a brief by *Gilbert & Ela* of Madison, and oral argument by *F. L. Gilbert.*

The following opinion was filed March 5, 1918:

WINSLOW, C. J.     There can be no question as to the plaintiff's right to recover from the appellants the three per cent. commission named in the written contract.     The three appellants signed this contract not only on their own behalf, but representing themselves to be authorized to sign it on behalf of the other owners, and the jury have found, on the contrary, that they had no authority to act for their co-owners.     Under these circumstances they are personally liable for the commission.     *Oliver v. Morawetz,* 97 Wis. 332, 72 N. W. 877.     As to the $2,000 additional commission we have had much difficulty.

The evidence which is supposed to support the first answer of the special verdict is principally the evidence of the plaintiff himself.     He testified to meeting the three appellants in McGilligan's saloon at Madison, January 11, 1916, and to the making of the written agreement before mentioned, and then testified that, after that agreement was signed, "I spoke to the boys, and I said if somebody has some property to trade in would you take the property?     They said, 'No, we won't take a cent in trade, we will give you three per cent., we don't care what you get, you can get $20,000.     All we want is the $16,000.' "

Upon cross-examination he testified in substance with reference to this conversation as follows:

"After that [the contract] was written I spoke to them about trading in property as part payment for the farm. *I considered it part of the contract* that if I traded for anything, took anything in trade, in order to make the deal, they said I had to take the property I got in trade, and I said I would.     I said that to *C. H.* [one of the brothers].     I don't know where *Ernest* was at this time, he may have been

around there.    C. H. talked to me more about it than all the rest.    I couldn't say whether this was a conversation I had with C. H. alone, others were near.    This conversation was with C. H.    I was talking direct to him and he direct to me: that was all the talking that was being done."

The only other evidence with regard to this alleged conversation was that of McGilligan, who testified that he heard a conversation after the contract was signed, and proceeded to give the conversation as follows:

"The only thing I heard said was, *Herbert Goodlad* [meaning *C. H.*], while he had a cigar he said he didn't care if he got $20,000, he didn't care for any stuff in trade.

"*Q.* You didn't care who got it?   ·

"*A.* No, *Roberts*.    He didn't care what he got over $16,000; he didn't want anything in trade.    That was all I heard said; they was having a cigar then after getting up from the table."

The appellants deny that any such conversation was had. We do not think there is sufficient foundation here to sustain a finding that an independent oral contract was made after the signing of the written contract, and this for four reasons, viz.: (1) The evidence as to the terms of the supposed oral contract is decidedly vague and unsatisfactory, and there can be no reasonable certainty as to what the language testified to meant when used: the subject under discussion was evidently the taking of property instead of cash and not the amount of the plaintiff's commission; (2) the supposed oral contract bears every evidence of being mere loose talk: it seems quite beyond the reasonable bounds of belief that the parties, after having carefully set down in exact terms an agreement covering the whole subject, should at the same interview and practically at the same time, in a few casual words, make a new and different contract of such grave import and leave the written contract on which the ink was hardly dry still in existence without attempt to change or recall it; (3) the conversation, by the plaintiff's own admis-

sion, was only with one of the appellants, and the plaintiff is unable to say that the others heard it or took part in it; (4) the alleged conversation was practically contemporaneous with the writing; both occurred at the same continuous interview with apparently no interval between. The plaintiff himself says: "I considered it a part of the contract" (*i. e.* the arrangement that if anything was taken in trade the plaintiff would have to take it). He evidently did not consider that there were two contracts, and we are of opinion that the evidence conclusively shows that there was in fact but one contract which was reduced to writing and which is not to be varied or contradicted by evidence of remarks or offers or inconsistent contemporaneous oral statements.

*By the Court.*—Judgment modified by deducting therefrom as of its date the sum of $2,000, and as so modified affirmed, with costs to the appellants.

Upon a motion by the respondent for a rehearing it was contended, *inter alia,* that he was entitled, at least, to a commission of three per cent. on $18,000, which would be $540.

On April 30, 1918, the mandate of this court was modified so as to read as follows:

Judgment modified by deducting therefrom as of its date the sum of $1,940, and as so modified affirmed, with costs to the appellants.

In all other respects the motion for rehearing was denied, without costs, except clerk's fees.