Dean v. Wendeberg, 175 Wis. 513.

DEAN, Respondent, vs. WENDEBERG and another, Appellants.

*November 17—December 13, 1921.*

*Brokers: Contract of employment: Made in Illinois and relating to lands in that state: Performance by broker: Failure of principal to complete sale: Cancellation of sale contract: Recovery of commissions.*

1. Sec. 2305*m*, Stats., requiring contracts agreeing to pay a commission for the buying or selling of real estate to be in writing, does not apply to a contract made in Illinois and relating to lands in that state.
2. A real-estate agent is entitled to his commission if he has produced a person ready, willing, and able to buy on the terms authorized by the vendor.
3. In the absence of an agreement to the contrary, the commission is earned when the proposed purchaser is willing to enter into an agreement on the terms specified by the owner. While an enforceable agreement may be made providing that the commission shall not be paid until the transaction is completed, the owner cannot avoid paying a commission if by his fault, misconduct, or wrongful neglect he prevents the consummation of his contract with the buyer.
4. Where the contract between the vendors and a purchaser procured by a broker was valid and the refusal of the vendors to live up to its terms was without justification, the broker was entitled to his commission.
5. The fact that the purchaser was willing to cancel the contract with the owner is no proof that the contract was induced by fraud.

APPEAL from a judgment of the county court of Walworth county: DAVID W. AGNEW, Acting Judge. *Affirmed.*

Action by a real-estate broker to recover a commission of $793.12 on a contract relating to a sale of land in the

state of Illinois.    The complaint set out the contract, the material part of which is as follows:

". . . Said parties of the first part have agreed, and do hereby agree, to pay unto the said *Dean* the sum of $793.12 on March 1, A. D. 1919, provided the said deal for said land between the said first parties and the said Keating is consummated at that time, *i. e.* if the said Keating pay said first parties that part of the purchase price mentioned in the contract between the said Keating and the said first parties and to be paid on March 1, A. D. 1919, then that said *Louisa Wendeberg* and *Charles J. Wendeberg* shall pay the said *Fred Dean* the said sum of $793.12 on March 1, A. D. 1919.

"It is further agreed between the parties hereto that even although said contract between said parties of the first part and the said Keating is not fully consummated on March 1, A. D. 1919, or in case there should be any new or different contract between the said parties of the first part and the said Keating at any time hereafter, then that the said *Dean* shall, nevertheless, be entitled to his said commissions of $793.12 on March 1, A. D. 1919."

The material part of the contract above mentioned between Keating and defendants provided that Keating, in consideration of defendants' equity in a certain farm, should pay them $11,727, $5,000 of which was to be in cash and the balance in six notes for $6,000, the notes being secured by a second mortgage on a farm in the vicinity.    Both contracts were made June 5, 1918.    Payment and transfer of title were to take place March 1, 1919.    On February 28, 1919, defendants and Keating rescinded the contract of sale.

It is undisputed that defendants knew that the mortgage they agreed to take in exchange was subsequent to a prior mortgage of $25,000; that defendants visited the mortgaged premises; and that they consulted their attorney concerning the transaction previous to making the agreement.

As to the value of the mortgaged farm and the notes in question, Keating testified that when the first mortgage was

foreclosed he did not bid because by agreement with the buyer he was to receive from him the full amount of his second mortgage, which agreement was carried out.

The substance of the findings will be stated in the opinion. Judgment was ordered for plaintiff for the full amount of his claim.

For the appellants there was a brief by *E. L. von Suessmilch* and *C. J. Sumner*, both of Delavan, and oral argument by *Mr. Sumner*.

For the respondent there was a brief by *J. W. Page* of Elkhorn, attorney, and *B. F. Manley* of Harvard, Illinois, of counsel, and oral argument by *Mr. Manley*.

JONES, J.   The contract sued on was made in the state of Illinois, hence the Wisconsin statute relating to contracts for brokers' commissions is not involved.

Ordinarily a real-estate agent is entitled to his commission if he has produced a person ready, willing, and able to buy on the terms authorized by the vendor.   In the absence of any agreement to the contrary, the commission is earned when the proposed purchaser is able and willing to take the property or enter into a valid contract upon the terms which have been specified by the principal.   *Willes v. Smith*, 77 Wis. 81, 45 N. W. 666; *Rees v. Spruance*, 45 Ill. 308; *Wilson v. Mason*, 158 Ill. 304, 42 N. E. 134.   See many cases cited in 44 L. R. A. 593.

In order to protect himself the vendor may include in the agreement with the broker a provision that the commission shall not be paid unless the deal is consummated, and of course such an agreement should be enforced according to its terms unless some good reason is shown to the contrary.   *Felts v. Butcher*, 93 Iowa, 414, 61 N. W. 991; *Flower v. Davidson*, 44 Minn. 46, 46 N. W. 308; *Stewart v. Fowler*, 37 Kan. 677, 15 Pac. 918.

But it would be manifestly unjust that the principal could avoid paying a commission fairly earned if by his own fault

or misconduct or wrongful neglect he has prevented the consummation of his contract with the buyer, and the courts will not sanction such injustice. *Phelps v. Monroe,* 166 Wis. 315, 165 N. W. 471; *Willes v. Smith,* 77 Wis. 81, 45 N. W. 666; *Bowe v. Gage,* 132 Wis. 441, 112 N. W. 469; *Fox v. Ryan,* 240 Ill. 391, 397, 88 N. E. 974; *Brown v. Wilson,* 98 Iowa, 316, 67 N. W. 251; *Smith v. Schiele,* 93 Cal. 144, 28 Pac. 857; *Gilder v. Davis,* 137 N. Y. 504, 33 N. E. 599. See note to *Brackenridge v. Claridge* (91 Tex. 527, 44 S. W. 819) 43 L. R. A. 593.

It is the question in this case whether the plaintiff should be deprived of his commission because, under the circumstances, the defendants refused to complete the agreement to sell. They contend that the contract with the purchaser was procured by fraud and therefore they were under no obligation to complete it. Whether, if the fraud were proved, this would be a defense to an action on this contract for commissions, it is not necessary to decide.

The trial court found, in substance, that plaintiff and Keating had made no false representations; that defendants made the agreement knowing all the facts; and that the agreement was made after defendants had consulted their attorney and personally inspected the farm; that the contract between Keating and defendants was valid and enforceable up to the time of rescission; that the refusal of defendants to live up to it was "wilful and arbitrary and without any legal justification or excuse;" and that the agreement to rescind made by defendants and Keating on February 28, 1919, constituted a new contract.

In our opinion the findings of fact were fully justified. This does not come within that class of cases where the representations relate to the value of property so far distant that investigation would be expensive and difficult, or to representations made to ignorant persons, or by those acting in a fiduciary capacity.

The defendants had every opportunity before the con-

tract to make full and easy investigation as to the value of the land covered by the securities they agreed to take. It is by no means clear that the notes and mortgage were not worth their full face value, since it appears that their full value was realized by Keating, the owner, and there seems no good reason why defendants could not have obtained their face value if they had completed the transaction and used reasonable care.

Appellants' counsel urge that the willingness of Keating to cancel the contract afforded some evidence of the fraud. There are two obvious answers to this argument. He may not have supposed the trade so advantageous to himself that it was best to bring an action for specific performance. Moreover, it not infrequently happens that parties prefer to forego some legal right rather than undergo the expense and annoyance of long litigation. Such choice does not necessarily call for any unfavorable inference. There is no proof that the plaintiff made any false representations, and it is clear that he fully and fairly rendered the service contemplated by the agreement.

There is considerable discussion in the briefs whether the voluntary cancellation of the contract by defendants and Keating was a "new or different contract" within the meaning of the brokerage agreement. It is also argued by respondent with much force that it was the legal effect of the brokerage agreement that the commission had already been earned and that there was no condition of payment but only a clause fixing the time of payment beyond which plaintiff would not be required to wait in any event.

According to our view, since there is ample evidence to sustain the findings of the trial court on the points already discussed, it becomes unnecessary to consider these questions.

*By the Court.*—Judgment affirmed.