KRUGER, Appellant, vs. WESNER and wife, Respondents.*

*October 11—November 7, 1956.*

* Motion for rehearing denied, with $25 costs, on January 7, 1957.

42

For the appellant there was a brief by *Davis, Soquet & Cherney* of Green Bay, and oral argument by *Colburn G. Cherney*.

For the respondents there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner*.

STEINLE, J.   It is the position of Walter Kruger that he fully performed his broker's contract with Reinhold and Lillian Wesner, and that therefore he is entitled to his entire commission. The Wesners contend that since the sale under their contract with Eldridge was not completed, they are not liable for the payment of the commission. They also maintain that their auction-sale contract with Kruger and their sale contract with Eldridge are void and unenforceable, for the reason that the description of the real estate as set forth in

those agreements is indefinite, and that it is insufficient to satisfy the statute of frauds. Sec. 240.10, Stats.

From language appearing in the auction-sale contract whereby Kruger's firm was recognized by the Wesners as the broker, we have no difficulty in concluding that the contract was one wherein the firm of which the plaintiff was a member, was employed by the defendants as a broker to sell the real estate at auction.

It may be generally stated that when a real-estate broker procures a purchaser who is accepted by the owner, and a valid contract is drawn up between them, the commission for finding such purchaser is earned, although the purchaser later defaults for no known reason, Anno. I *b,* 51 A. L. R. 1392; or because the purchaser deliberately refuses to consummate the contract, Anno. I *e,* 51 A. L. R. 1394; or because of financial inability of purchaser to comply with the contract, Anno. 73 A. L. R. 927. See also *Wauwatosa Realty Co. v. Paar,* ante, p. 7, 79 N. W. (2d) 125.

The courts are practically unanimous in holding that a broker employed to sell or exchange lands earns his commission, unless the contract of employment contains a stipulation to the contrary, when a customer and the employer enter into a valid and binding contract for the sale or the exchange of lands. Pertinent is the observation of the court in *Oregon Home Builders v. Montgomery Inv. Co.* (1919), 94 Or. 349, 363, 184 Pac. 487, 492:

". . . but the literally overwhelming weight of authority is that, unless the employer and broker have stipulated to the contrary, the broker has fully earned his commission when the customer and employer enter into a valid and binding contract for the sale or exchange of lands and the broker's right to recover a commission is not, in the absence of bad faith upon his part, defeated or even affected by the fact that it subsequently develops that the customer is unable to complete his contract to buy on account of financial inability or is unable to complete the contract to exchange on account

of inability to transfer a merchantable title. When a broker employed to sell or exchange lands presents a customer, there are, as stated in *Roche v. Smith,* 176 Mass. 595, (58 N. E. 152, 79 Am. St. Rep. 345, 51 L. R. A. 510), three courses open to the employer:

" '(1) He may examine the title of the customer, and accept him or not accept him on learning the result of the examination; (2) he may enter into a contract with him, in which it is provided that his title shall be examined, and if it turns out that his title is not good the contract is at an end; or (3) he may enter into a binding contract with him for the conveyance of the land.'·

"If the employer takes the third course, he in effect says to the broker:

" 'I accept the customer as a person ready, able, and willing to purchase or exchange lands, as the case may be; you have done what you agreed to do; I have accepted the services rendered by you; and you have earned your commission.'

"The employer has a reasonable opportunity to investigate the ability of the customer to perform and when, without fraud or misrepresentation on the part of the broker, the employer accepts the customer by effecting a valid and binding contract with him, it is equivalent to a determination that the customer is a person ready, able, and willing to purchase or exchange, and the employer is estopped thereafter to deny the ability or willingness of the customer to complete the contract."

It was through the efforts of the plaintiff broker in the case at bar that a binding contract for the sale of the land was entered into between the owners and the customer. It does not appear that the broker was guilty of any bad faith, or that he concealed from the owners any material information that they were entitled to before they accepted the customer. The plaintiff maintains that under the terms of the brokerage contract he became entitled to the payment of the commission when the contract between the owners and the customer was executed. Manifestly, the owners clearly recognized their obligation in such respect, for after executing the contract

with the customer, they agreed in writing to pay the commission to the plaintiff. It seems very clear that by virtue of such understanding, they were of a mind that the broker had earned the commission, and that his entitlement to the commission was not conditioned upon a completion of the sale, as they now contend. Of course, if under the terms of a broker's contract it is specifically agreed that a commission shall not be earned until a sale is completed, regardless of the existence of a contract between the owner and the customer for the sale of the property, there can be no recovery of the commission unless and until the sale is actually completed. Anno. II *a,* Special Contract, 51 A. L. R. 1399; and Anno. II *a,* Special Contract, 73 A. L. R. 929.

As an item indicating intention on the part of the owners that the commission could not be earned until the sale was completed, counsel for defendants points to that provision in Eldridge's written offer which reads:

"Purchaser has handed to Realty Auction Service the sum of $1,000, with instructions that same be deposited in a trust account in an insured bank, to be kept there until the deal is consummated, as an earnest-money payment upon the purchase price of said property. If this offer is not accepted, the earnest-money payment shall be returned to the purchaser. If purchaser defaults, such payment is forfeited and shall be applied first toward the commission of the broker."

Were it to be granted that the words "until the deal is consummated" appearing in this clause of the customer's offer, mean "until the transfer of the property is completed," nevertheless such language does not necessarily imply that the broker had not earned his commission, but may mean that the money was to be held so that it would be available for delivery to the owners as part of the purchase price when the closing of the sale took place. The action of the owners in specially agreeing to the payment of the commission after they had executed their contract with Eldridge is entirely inconsistent and contrary to any intention that he could not

earn the commission until the transfer of the property had taken place, and hence it is only reasonable to believe that if the owners at all considered the clause in Eldridge's offer to the effect that the deposit was to be kept in the bank until the deal was consummated, they treated it merely as a custodial matter on plaintiff's part after he had earned his commission.

We are constrained to conclude that it was not the intention of the parties to the auction contract that the broker was to be entitled to his commission only in the event that the property was transferred, but that it was intended that he would become eligible thereto when a binding contract between the owners and the customer was executed.

In the auction-sale agreement between the owners and the broker, the property involved in the sale was described as follows: "My property located on Depo road Hy. 23 & 49 in the town of Brooklyn consisting of 2-family modern home. Restaurant & auto service station & repair garage known as Wesner Bros. property."

In the customer's written offer which was accepted by the owners, the following appears: "The undersigned hereby offers to purchase your property located in Green Lake county, Wisconsin, more particularly described as follows: Property located on Hy. 23 & 49 in the town of Brooklyn Sec. 16— Town. 16, R. 13, 2-Farm Home garage Bldg. Restaurant."

Respondents' counsel urges that the descriptions are indefinite and insufficient, and that hence the contract is unenforceable. In his brief he states that: "The testimony shows that there was extra land with the garage which is not described. That there was extra land with the home which is not described, and with the restaurant which is not described. It also shows that the property is not even located in a city or village so that there would be descriptions by lot, but that it is located in the rural town of Brooklyn. The testimony of Wesner showed that he owned more real estate within

350 feet. The fact that Mr. Wesner knew what property was intended is not sufficient to validate the description or the contract."

With reference to this position the counsel relies on *Thiel v. Jahns* (1947), 252 Wis. 27, 30, 30 N. W. (2d) 189, where a receipt was involved which provided "down payment on house at Little Chicago," and the court found that the description was too vague and uncertain to constitute a binding contract. In that case there was a dispute as to the amount of land connected with the house. The court in its opinion said:

"In this case the agreement is to sell the 'house at Little Chicago.' The house at Little Chicago is on one and one-half acres of land. Resort to parol indicates that the house and less than one and one-half acres of land are so inclosed as to make a complete living unit. When we get into the testimony we find a dispute as to what property was agreed to be sold by this memorandum, and to grant specific performance is to use parol evidence not to identify the property in the memorandum but to establish by parol what property was intended to be sold. We cannot do this under the statute of frauds. Had the contract been to sell 'my real estate at Little Chicago' or 'all of my property in Little Chicago' the property could be identified by establishing that defendant owned only one piece of real estate or property in Little Chicago. In such cases parol evidence is used simply to identify the property to which reference is made in the memorandum. The description must be sufficient, however, so that the function of parol is limited to identification to a reasonable certainty. In this case the parol evidence discloses that the word 'house' could include the inclosed lawn and garden or even less than that or that it could include the balance of the acreage. In order to establish the description of the land intended to be conveyed it is necessary to give independent effect to the parol understanding as to the quantity of land involved. This is not identification. It is supplying a portion of the description by parol and this is clearly contrary to the statute and to the rule in the *Harney Case, supra*. [*Harney v. Burhans* (1895), 91 Wis. 348, 349, 351, 64 N. W. 1031.]"

The facts in the instant matter are clearly distinguishable from those in *Thiel v. Jahns, supra.* Here the auction agreement refers to "my property" and the sales contract specifies "your property." Here, there is no dispute between the owners and the broker or between the owners and the customer as to the precise amount of land and the number of buildings that were to be included in the sale. The defendant Reinhold Wesner testified as follows:

"*Q.* Mr. Wesner, there never was any question was there, about what you were going to sell to Mr. Eldridge, was there? *A.* No, there wasn't.

"*Q.* You knew that you were selling your modern home? *A.* That's right.

"*Q.* And the lot. You were selling the restaurant? *A.* Yah.

"*Q.* That you were selling the auto service station? *A.* Yes.

"*Q.* And that you were selling the repair garage? *A.* That's right.

"*Q.* And there was never any question that you were selling some other property? *A.* Never.

"*Q.* It was fully understood between you and Mr. Eldridge exactly what the property was involved; is that correct? *A.* That's right."

The contracts specified the precise property that was intended for sale. Had additional identification or description been necessary, parol evidence would have been admissible to establish the same. We can find no merit to appellants' contention in this regard.

No evidence was presented at the trial to establish the claim asserted in the counterclaim relative to the failure of the plaintiff to return the abstract of title to the defendants. In his reply to the counterclaim the plaintiff had alleged that he was not in possession of the abstract and had not converted it to his use. We are not in a position to make determination of the matter except to dismiss such claim without prejudice, which disposition is hereby directed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of plaintiff in manner conformable with this opinion.

BROADFOOT, J., dissents.