WAUWATOSA REALTY COMPANY, Appellant, vs. PAAR and wife, Respondents.

*October 10—November 7, 1956.*

For the appellant there was a brief by *William F. Scholl* and *Mark M. Camp,* both of Milwaukee, and oral argument by *Mr. Camp.*

For the respondents there was a brief by *A. A. Hindin,* attorney, and *John A. Fiorenza* of counsel, both of Milwaukee, and oral argument by *Mr. Hindin.*

STEINLE, J. The question involved on this appeal is whether the plaintiff real-estate broker procured a purchaser ready, willing, and able to purchase the defendants' real estate pursuant to the terms of its listing contract so as to entitle the plaintiff to a broker's commission.

There is no dispute in the facts that on October 27, 1951, the plaintiff procured from Edward and Rose Jurss, their written offer to purchase the property at a price of $15,000.

The offer was accepted by the defendants. The date agreed upon for the closing of the sale was January 3, 1952. Previous to the time fixed for closing, Mr. and Mrs. Jurss arranged with a bank in Milwaukee for part financing of the purchase price through a mortgage loan on the property from the bank. Mr. and Mrs. Jurss and Mr. and Mrs. Paar presented themselves at the office of the bank at the time fixed for closing the sale. Mr. and Mrs. Jurss were financially able and were willing to pay the entire purchase price. Up to that time Mr. and Mrs. Jurss had not been advised of the existence of an unsatisfied $700 judgment against the defendant, Carl Paar, which was a lien against the property. Attorney Spoerl, who represented the plaintiff in the transaction, had previously obtained notice of the unsatisfied judgment of record when he made cursory examination of the abstract of title, after plaintiff obtained the abstract from defendants' mortgagee, and after Attorney Spoerl had caused it to be extended, and before the plaintiff sent the abstract to the bank with which Mr. and Mrs. Jurss had arranged for their loan. The abstract of title was sent to the bank by the plaintiff in the early part of December, 1951. The written contract of purchase between the sellers and the purchasers provided that the sellers had a choice of furnishing either an abstract of title or a policy of title insurance. The contract provided that if an abstract of title was to be furnished, it was to be extended to within twenty days of the closing and was to show marketable title, and was to be delivered to the buyer for examination at least fifteen days prior to the date set for the closing. It was further provided that the buyer shall notify the seller in writing of any valid objection to the title within ten days after the receipt of the abstract, and that the seller shall then have a reasonable time, but not exceeding ninety days, within which to rectify the title. The purchasers did not notify the sellers of objection to the title within the time provided after the abstract was delivered to the bank on their behalf. An attorney representing the bank had ex-

amined the abstract of title on January 3, 1952, previous to the meeting and found that the title was good in the sellers excepting for the judgment. When Mr. and Mrs. Jurss appeared at the bank, the attorney for the bank informed them of the judgment. Mrs. Jurss testified at the trial that the bank was unwilling to loan the money on the mortgage as previously arranged, unless the judgment was satisfied. Mr. and Mrs. Jurss were not represented by an attorney. At the meeting, Paar took the position that the judgment was paid. He claimed that while the judgment had been docketed against him thirteen to fifteen years previously, he had since then instructed an agent of his to pay it; had delivered to the agent the required amount for payment; had received a receipt from the agent; and had assumed that the matter was properly taken care of. At the meeting Attorney Spoerl suggested an arrangement whereby sufficient money be held in escrow to cover the payment of the judgment.

There was a dispute in the evidence as to whether the defendant Paar agreed to such proposed escrow arrangement. Considerable testimony was presented at the trial to the effect that he had so agreed, and the court found that he had done so. The finding is not against the clear preponderance of the evidence.

Mr. and Mrs. Jurss refused to proceed with the transaction for the reason that the judgment was not satisfied of record. They departed from the bank abruptly, did not return, and at no time thereafter were they interested in closing the transaction. It does not appear that the bank was unwilling to agree to the escrow arrangement. Mr. and Mrs. Jurss subsequently engaged counsel to obtain refund of their down payment. There is no disclosure in the record as to whether the down payment was returned. Although the Paars for a few days after the meeting at the bank were willing to close the sale upon the basis of the proposed escrow arrangement, they later indicated to the plaintiff that they were no longer interested in selling the property. When payment of

$750 claimed for commission was not made after demand, the action was commenced.

The courts below determined that in view of the defendants' willingness to carry out the proposed escrow arrangement, the title of the real estate as offered by them was marketable, and that they were not at fault for failure to complete the sale; that the refusal of Mr. and Mrs. Jurss to close the sale was arbitrary, and hence they were not willing purchasers; that the plaintiff did not produce a willing purchaser, and therefore did not earn the commission.

The defendants had bound themselves to pay a commission in the event that a person ready, willing, and able to purchase their property was procured by the plaintiff. The payment of the commission was not conditioned upon the completion of the sale. The plaintiff produced and presented customers who actually entered into a valid and enforceable written contract with the defendant for the purchase of their property. While the defendants were not at fault with respect to the failure of the completion of the sale, nevertheless they had acquired a right to seek specific performance or damages for breach of contract against the purchasers for their arbitrary refusal to conclude the purchase agreement. The situation is not analogous to that found in *Estate of Boley* (1933), 211 Wis. 431, 248 N. W. 452, where the payment of the commission was conditioned upon the consummation of the sale, and in which case it was ruled that since the sale was not completed, there was no obligation on the part of the seller to compel the seeking of specific performance or damages for breach. However, it is to be noted that in the *Boley Case* the court distinguished between situations where the agreement was to pay a commission only when sale was consummated (as contemplated under the broker's contract there), as contrasted with such in which the broker was merely required to furnish a customer ready, willing, and able to purchase, in order to be entitled to compensation. The court in *Estate of Boley* said (p. 433):

"This agreement contains such definite wording as that the commission is 'to be paid on the day the conveyances are executed.' This provision takes the case out from under the rule that the real-estate agent is entitled to be paid a commission when he finds a purchaser able, willing, and ready to buy the property at the price fixed by the owner, and places it under the rule that the seller and the real-estate agent having stipulated the conditions upon which the payment of the commission depends, a recovery is limited by those stipulations.

"In the one case the absence of an agreement fixing the terms and conditions upon which the payment of a commission is to depend leaves the broker entitled to claim his commission when he has procured a purchaser able, ready, and willing to take the property. In the other situation the agreement brings the facts under the rule recognized in such cases as *Dean v. Wendeberg* [1921], 175 Wis. 513, 185 N. W. 514, where a condition precedent to the payment of the commission does exist; for, as the court in the *Dean Case* said, 'In order to protect himself the vendor may include in the agreement with the broker a provision that the commission shall not be paid unless the deal is consummated, and of course such an agreement should be enforced according to its terms unless some good reason is shown to the contrary.' "

In *Dean v. Wendeberg* (1921), 175 Wis. 513, 515, 185 N. W. 514, it was stated that:

"Ordinarily a real-estate agent is entitled to his commission if he has produced a person ready, willing, and able to buy on the terms authorized by the vendor. In the absence of any agreement to the contrary, the commission is earned when the proposed purchaser is able and willing to take the property or enter into a valid contract upon the terms which have been specified by the principal. *Willes v. Smith,* 77 Wis. 81, 45 N. W. 666; *Rees v. Spruance,* 45 Ill. 308; *Wilson v. Mason,* 158 Ill. 304, 42 N. E. 134. See many cases cited in 44 L. R. A. 593."

The right of a broker to compensation accrues on completion of negotiations and on a meeting of the minds of the

principal and the customer procured by the broker; but, unless provided otherwise in the contract of employment, it is not dependent on the final consummation of the transaction or the performance of the agreement entered into between the principal and the customer. 12 C. J. S., Brokers, p. 183, sec. 84.

A broker's commission may be earned when a sale or exchange is actually completed or consummated, or when the minds of the parties are brought to an agreement on the sale or exchange and the terms thereof, as where an offer is made and accepted. 12 C. J. S., Brokers, p. 184, sec. 84.

Brokers have earned their commission when the stated terms are accepted by their customers and the contract is closed; but they are not entitled to the commission where the stated terms were not accepted and the parties never agreed on other terms. *Weller v. Phillip Gross Realty Co.* (1921), 173 Wis. 447, 180 N. W. 927.

In Restatement, 2 Agency, p. 1040, sec. 445, it is declared:

"If the principal accepts a customer produced by the broker and enters into an enforceable contract with the customer, whether or not the customer is able to perform it or intends to perform it, the broker's right to his commission is not defeated by a subsequent default on the customer's part, unless the principal's promise to the broker is expressed to be conditional upon such actual performance by the customer, or unless the broker has failed to reveal to the principal facts known to him which would indicate the likelihood of such default, or is guilty of some similar breach of duty to the principal." See also Annos. 51 A. L. R. 1392, 1394; 73 A. L. R. 927, 928.

In the light of these principles it follows that if a contract provides that a broker shall be entitled to a commission when he has procured a purchaser ready, willing, and able to buy, then when the broker acts in good faith, and the principal

accepts his customer and enters into a valid and enforceable contract with him for the purchase of the property, the matter of the customer's ability, readiness, and willingness is no longer open to question.

To sustain the position of respondents, in the case at bar it would be necessary to hold that notwithstanding the willingness and the financial ability of the customers to purchase the property at the time when their offer was accepted by the sellers in the form of a valid and enforceable contract, the broker was precluded from entitlement to compensation, for the reason that the customers thereafter, without fault of the broker rejected their obligation under the contract. Under such view there would exist no distinction in a situation wherein a broker would be entitled to a commission only when the sale was finally completed and one in which he would be entitled thereto when he procured a purchaser ready, willing, and able to purchase. Respondents' position manifestly is contrary to the well-established principles referred to above.

From the evidence of record in the case at bar it does not appear that the broker or any of its representatives acted with fault or in bad faith which may have prejudiced either the interest of the purchasers or the sellers, so as to preclude recovery of the commission.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to enter judgment in favor of the plaintiff in accordance with the demand of the complaint.

BROADFOOT, J., dissents.