PETER M. CHALIK & ASSOCIATES, Appellant, v. HERMES, Respondent.

*No. 158. Argued October 3, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 514.)

152

For the appellant there were briefs and oral argument by *Walter R. Nicolai* of Milwaukee.

For the respondent there was a brief and oral argument by *Marshall E. Fredrich* of Milwaukee.

CONNOR T. HANSEN, J. This appeal is from a judgment entered pursuant to motion for a directed verdict in favor of defendant. On review, this court must ex-

amine the evidence most favorable to the party against whom the motion is directed and if there is any evidence which will sustain his cause of action, the motion should have been denied.[1] This court, in *Low v. Siewert* (1972), 54 Wis. 2d 251, 252, 195 N. W. 2d 451, recently stated:

"The procedure of reserving the disposition of a motion to direct a verdict until after the jury returns its verdict is the preferred procedure. Although such procedure allows some hindsight with a jury's verdict and while an appeal is almost inevitable when the court differs with the verdict, at least a retrial is avoided if there is a reversal. In reviewing the granting of a motion to direct a verdict, this court must examine the evidence most favorable to the party against whom the motion is directed and if there is any evidence which will sustain his cause of action, the motion should have been denied. . . ."

To a great extent, the difficulties presented in this case arise out of two situations, both attributable to the plaintiff.

The first is plaintiff's performance, or attempted performance, under the terms of an exclusive real estate sales agreement drafted by an agent of the plaintiff.

The second arises out of the manner in which the plaintiff set forth its cause of action for damages in its complaint.

(1) It is undisputed that on October 20, 1965, the parties entered into a real estate listing contract whereby the plaintiff was given the exclusive right to procure a purchaser for certain business property owned by the defendant and consisting of "Tavern business, building, license and all attached equipment," for the sum of $95,000, payable upon terms which provided for a down

---

[1] *Phoenix Ins. Co. v. Wisconsin Southern Gas Co.* (1970), 45 Wis. 2d 471, 173 N. W. 2d 610; *Quality Lumber & Coal Co. v. Kemp* (1970), 46 Wis. 2d 621, 176 N. W. 2d 401; *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 151 N. W. 2d 741.

payment of $28,000, and the balance to be paid "on terms to be determined by the sellers." It was agreed that the commission was to be $5,000. The listing contract was for a term of October 20, 1965, to November 15, 1965; however, it provided that no sale was to be closed until after January 10, 1966.

It is also undisputed that a written offer was executed October 23, 1965, wherein Stair, a prospective purchaser, submitted an offer of purchase for $95,000, with earnest money of $5,000 and an additional down payment of $17,000 upon closing, and the balance to be paid pursuant to a land contract having a five-year term and providing for interest at the rate of 5¾ percent.

A substantial variance existed between the listing contract and the offer. The listing contract required a down payment of $28,000; the offeror's total down payment was $22,000. The offer also included items of substantial value in the purchase price which were not included in the listing contract, namely, stools, two bar tables and chairs, and a cash register. The offer also included terms for the payment of the balance of the purchase price, whereas the listing contract provided that the balance was to be paid "on terms to be determined by the sellers."

The evidence most favorable to the plaintiff indicates that the defendant, in rejecting the offer, did not state a reason except that he was not interested in selling anymore.

(2) This case was tried on a theory of substantial performance under the contract in that plaintiff sought to recover its commission of $5,000, plus interest. However, the language of the complaint setting forth the cause of action is ambiguous. The complaint states:

"5. That plaintiff has complied with all terms of said contract entered into between the parties for the sale of defendant's property located at 4730 N. 76th Street,

Milwaukee, Wisconsin, but that defendant refused to carry forth his portion of said contract and terminated said contract by refusing to comply with any of the terms of the contract as set forth in writing."

Alleging full compliance under the contract and seeking its commission of $5,000, as called for in the contract, plaintiff seeks relief on the contract. However, when it alleges termination of the contract and argues that defendant "refused to allow the plaintiff to perform his [its] contract," it is seeking relief for defendant's alleged breach of contract. Plaintiff also states in its brief that it is basing its cause of action on a breach of contract. On the one hand, it argues that it per- formed all of its duties under the contract, and on the other it claims that it failed to perform its contract due to the fault of the defendant.

The trial court determined that plaintiff was proceeding on the contract and submitted questions to the jury upon that basis. We agree with this determination.

If plaintiff's agency was revoked, without cause, defendant is liable to it for damages but not its commission. In *Sinden v. Laabs* (1966), 30 Wis. 2d 618, 621, 141 N. W. 2d 865, this court cited with approval *Schoenmann v. Whitt* (1908), 136 Wis. 332, 334, 117 N. W. 851, stating:

" 'Although the principal may revoke the broker's agency notwithstanding the employment is to continue for a definite time, he renders himself liable, unless such revocation is for cause, for such damages as are the proximate result of his termination of the employment contract. This assumes, of course, that the contract is supported by consideration and is otherwise binding.' " [2]

The court, in *Sinden v. Laabs, supra,* page 622, went further to state:

---

[2] *See also:* 12 Am. Jur. 2d, *Brokers*, p. 814, sec. 56.

"Sinden's remedy was either to bring action for damages for breach of the contract or to disaffirm the contract and seek recovery of the reasonable value of the services he had rendered. . . ."

If plaintiff is contending that defendant, in bad faith, prevented it from performing under the contract, or terminated the contract before the expiration date, its remedy lies in an action for breach of contract or *quantum meruit* not an action on the contract.

However, plaintiff has failed to allege any damages, and sues for its commission. The plaintiff did not raise the issue of damages for breach of contract or *quantum meruit* in the trial court and did not argue them on appeal. Therefore, these issues are not before us on this appeal.

This court has held that a broker, employed "to procure a purchaser" for real estate, is entitled to his commission when he produces a person ready, willing and able to purchase upon the terms specified by the owner in the brokerage contract.[3]

It has often been held that where a material and substantial variance exists between the listing contract and the offer, the seller is free to reject the offer without incurring liability to the broker.[4] This defense to a broker's action for his commission is not waived when the seller rejects the incongruent offer without stating the variance or any other ground for his reason.[5] In *Kleven v. Cities Service Oil Co.* (1964), 22 Wis. 2d 437, 444, 126 N. W. 2d 64, it was stated:

---

[3] *Boutelle v. Chrislaw* (1967), 34 Wis. 2d 665, 673, 150 N. W. 2d 486; *Niske v. Nackman* (1956), 273 Wis. 69, 76 N. W. 2d 591.

[4] *Libowitz v. Lake Nursing Home, Inc.* (1967), 35 Wis. 2d 74, 150 N. W. 2d 439, 151 N. W. 2d 680; *Boutelle v. Chrislaw, supra;* *Kolsbun v. Ausen* (1917), 165 Wis. 54, 160 N. W. 1043; *Henschell v. J. L. Gates Land Co.* (1911), 146 Wis. 140, 131 N. W. 423.

[5] *Libowitz v. Lake Nursing Home, Inc., supra,* page 82; *Stearns v. Jennings* (1906), 128 Wis. 379, 107 N. W. 327.

". . . [W]here the variance is a substantial one, such as one that is directly in conflict with a material provision of the listing contract, there has been no substantial performance by the broker which would entitle him to his commission, absent acceptance of the offer by the owner. The broker is chargeable with knowledge that such substantial variance exists when he submits the offer, and, therefore, the owner should be under no duty to point this variance out to the broker in rejecting the offer."

The record indicates a substantial variance. Plaintiff cannot support its contentions of full compliance with the listing contract by offering proof of the offer of Stair, who was the sole prospective purchaser.

Plaintiff then argues that testimony offered at trial would support its contentions that Stair was willing to offer a $28,000 down payment. The jury was asked whether the facts of purchaser's readiness, willingness and financial ability were communicated to the seller. The jury answered this question in the affirmative. However, on motions after verdict, the trial court properly found that it had erred in submitting the question because there was no evidence offered to support such an answer.

Where the listing contemplates negotiation of terms, as in the instant case, a commission is not earned until an agreement is reached upon the terms between buyer and seller.[6] This court, in *Nordale Realty Co. v. Hanel* (1947), 251 Wis. 136, 138, 28 N. W. 2d 245, stated:

". . . It is also settled that when the principal has furnished the broker with only part of the terms with an understanding that further details are subject to negotiation between the principal and the prospective buyer the principal may terminate such negotiations without liability to the broker. *See* Restatement, 2 Agency, sec. 445; *Henschell v. J. L. Gates Land Co.* 146 Wis. 140, 131 N. W. 423; *Grinde v. Chipman,* 175 Wis. 376, 185 N. W. 288. . . ."

---

[6] *Henschell v. J. L. Gates Land Co., supra,* page 150.

Plaintiff insists that it should still be allowed to recover its commission because defendant refused to allow plaintiff to perform its contract. Plaintiff alleges bad faith on the part of defendant.

In *Dean v. Wendeberg* (1921), 175 Wis. 513, 515, 516, 185 N. W. 514, this court recognizes this exception of bad faith to the rule which was also later recognized in *Nordale,* when it stated:

". . . [I]t would be manifestly unjust that the principal could avoid paying a commission fairly earned if by his own fault or misconduct or wrongful neglect he has prevented the consummation of his contract with the buyer, and the courts will not sanction such injustice . . . ."

This exception was again noted in *Libowitz v. Lake Nursing Home, Inc., supra.* The exception is stated in 12 Am. Jur. 2d, *Brokers,* pp. 907, 908, sec. 167, as:

"It is a rule of universal recognition that the principal must act in good faith toward the broker, and in the event of his failure to do so the broker will not be deprived of his commissions solely by reason of his employer's breach of duty. If the broker performs his part of the contract by doing all that he is required to do and is prevented from or deprived of the opportunity of consummating the sale by the act of the principal, he is still entitled to his commission. This rule is based upon the familiar principal that no one can avail himself of the nonperformance of a condition precedent who has himself occasioned its nonperformance. . . .

"A broker's right to the remuneration agreed upon is not defeated if his principal, in wrongfully revoking his authority or in withdrawing the property offered for sale, is actuated by the fraudulent motive of avoiding the payment thereof. . . ."

However, the plaintiff cannot use this exception in its action on the contract. The rule states that once a valid offer is procured and communicated to the seller, or in other words the broker has "performed his part of the contract," the seller cannot then in bad faith refuse

to negotiate through to consummation of the deal, or revoke the broker's agency and "avail himself" of the offer. An offer in substantial compliance with the listing contract is prerequisite. In *Dean v. Wendeberg, supra,* and *Libowitz, supra,* where the exception was discussed, such an offer existed. The prerequisite offer does not exist in this case.

Furthermore, the evidence, taken in the light most favorable to the plaintiff, is not sufficient to support a finding or raise a jury issue concerning Stair's financial ability to proceed. The evidence in this regard was that Stair had $37,000 in liquid assets and could have obtained the remaining $58,000, either through a mortgage on the property or a loan from his mother, who, he testified, was ready to lend.

This court, in *McCabe v. Jones* (1910), 141 Wis. 540, 124 N. W. 486, held that the fact the purchased property will be used to raise part of the purchase price does not mean that the purchaser does not have the necessary pecuniary ability. This court, in *McCabe, supra,* page 543, went further in stating:

". . . 'Pecuniarily able,' in this connection, must of course have a reasonable construction. It cannot mean that the proposed purchaser must necessarily have all the money in his pocketbook or to his credit at the bank, but that he is able to *command* the necessary money to close the deal on reasonable notice, or within the time limited by the vendor, if a time be limited." (Emphasis supplied.)

This holding was cited as the law of Wisconsin in *Boutelle v. Chrislaw, supra,* page 674.

The rule as stated in 12 C. J. S., *Brokers,* pp. 193, 194, sec. 85–b, is as follows:

"Aside from immediate cash payments, the ability of a purchaser is not to be judged exclusively with reference to money in his possession or to his credit in a bank; consideration should also be given to his assets, credit,

financial rating, enforceable agreements for loans, and anything else indicating ability or lack of ability on his part to command the requisite funds at the required time. A purchaser may have ability to meet the terms of the contract of sale notwithstanding it is inconvenient for him to raise money or he owns real estate on which a homestead has been taken out. On the other hand, a customer is not invested with the requisite financial ability by *an unenforceable offer or promise of a third person* to furnish funds or make a loan to him, . . ." (Emphasis supplied.) [7]

Therefore, it is the established rule in this state that the purchaser does not need the necessary cash in hand but must be able to "command" the necessary funds. The evidence will not support a finding that Stair had the present ability to command the necessary funds. His mother was in no way bound to furnish the funds and there is no evidence that the bank was committed to loan Stair the money.

The authorities outside Wisconsin uniformly hold the word "able" includes a reference to financial ability not only to make the initial payment required to meet the terms of the seller, but also to complete the contract of purchase according to its terms. A proposed purchaser cannot be said to be able to purchase when he is dependent upon third parties who are in no way bound to furnish the funds.[8]

Plaintiff relies upon the language in *Shell Oil Co. v. Kapler* (1951), 235 Minn. 292, 298, 50 N. W. 2d 707, 712, which states:

---

[7] For a similar statement of the rule see 12 Am. Jur. 2d, *Brokers,* p. 924, sec. 184.

[8] *Morere v. Dixon Real Estate Co.* (La. 1966), 188 So. 2d 623; *C. O. Frick Co. v. Baetzel* (1942), 37 Ohio Law Abstract 565, 47 N. E. 2d 1019; *Abbott v. Floyd* (Cal. 1934), 136 Cal. App. 365, 28 Pac. 2d 929, 930; *Pellaton v. Brunski* (1924), 69 Cal. App. 301, 231 Pac. 583, 584; *See also:* Annot. (1919), *Brokers' Commissions —Ability to Pay,* 1 A. L. R. 528.

"Generally speaking, a purchaser is financially ready and able to buy: (1) If he has the needed cash in hand, or (2) if he is personally possessed of assets—which in part may consist of the property to be purchased—and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, or (3) if he has definitely arranged to raise the necessary money—or as much thereof as he is unable to supply personally—by obtaining a *binding commitment* for a loan to him for that purpose *by a financially able third party,* irrespective of whether such loan be secured in part by the property to be purchased. . . ."

Plaintiff contends that Stair, the prospective buyer, was able to purchase under "(2)" of the definition. There is no evidence in the record from which the jury could draw the inference that Stair had a credit rating which would have enabled him, *at that time,* to command the funds. Plaintiff, at trial, attempted to introduce into evidence the fact that, at some point subsequent to the dealings with defendant, Stair did, in fact, purchase another piece of property for $70,000. The trial court properly excluded the evidence on the grounds of irrelevancy.

We agree with the trial court in its opinion that the testimony, when viewed most favorably in behalf of the plaintiff, does not satisfy the burden of proving that the prospective purchaser was financially able to purchase.

Defendant rejected Stair's offer without stating his reasons. Although not raised by the parties, there is conflict among the authorities whether the seller, who states no reason for rejecting an offer, can later defend on the prospective buyer's financial inability to buy.[9] This issue has never been decided in Wisconsin. This court has addressed itself to whether a variance between the offer and the listing contract can be waived and has decided that it is not waived where: (1) It was a substantial variation, (2) it was insubstantial but called to the attention of the broker, or (3) it was insubstantial, but

[9] *See:* Annot. (1945), 156 A. L. R. 602, 611.

of such a nature that they could not have been remedied by the broker anyway.[10] This court, in *Kleven v. Cities Service Oil Co., supra,* page 444, has held:

"The reason for holding the owner liable for the broker's commission, where he refuses an offer to purchase submitted by the broker which contains a variance from the listing contract that is not substantial without mentioning this variance as a ground for the refusal, is that fair dealing on the owner's part requires that he point out such variance so that the broker may be afforded an opportunity of correcting it. . . ."

From this rationale of the waiver rule, we conclude that a seller does not waive the financial inability of the buyer as a defense when he gives no reason for rejecting the offer.

The evidence, viewed most favorably in plaintiff's behalf, presents no question for the jury to decide as to plaintiff's performance under the contract. As a matter of law, plaintiff failed to comply with the terms of the contract, in that (1) an offer in substantial compliance with the terms of the listing contract was never communicated to defendant, and (2) the plaintiff did not demonstrate at trial that the sole prospective buyer procured by it was ready, able and willing to perform under the terms of the listing contract. Plaintiff, not performing its duties under the contract, is not entitled to the commission on the contract.

*By the Court.*—Judgment affirmed.

---

[10] *Libowitz v. Lake Nursing Home, Inc., supra,* pages 82, 83.