WINSTON, d/b/a H. H. WINSTON COMPANY, Respondent, v. MINKIN, Appellant.

*No. 311. Argued March 5, 1974.—Decided April 2, 1974.*
(Also reported in 216 N. W. 2d 38.)

48

For the appellant there was a brief and oral argument by *Phillip J. Markey* of Milwaukee.

For the respondent there was a brief by *Pfannerstill, Camp & Tyson* of Wauwatosa, and oral argument by *Richard F. Tyson.*

HANLEY, J. Two issues are presented on appeal:

1. Whether or not the listing contract, signed by but one of the co-owners of said property, is in compliance with sec. 240.10, Stats., and enforceable.

2. Whether the plaintiff procured a buyer ready, willing and able to purchase upon the terms specified by the owner in the listing contract or acceptable to him.

*Compliance with sec. 240.10, Stats.*

The defendant contends that the listing contract was not in compliance with sec. 240.10, Stats., and unenforceable in that it was signed by but one of the co-owners of the property. This contention is without merit.

Sec. 240.10, Stats., is an extension of the statute of frauds and was designed to prohibit recovery for services rendered in the absence of a written agreement.[1]

"240.10 **Real estate agency contracts.** (1) Every contract to pay a commission to a real estate agent or broker or to any other person for selling or buying real estate shall be void unless such contract or note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller, be in writing and be subscribed by the person agreeing to pay such commission."

Its purpose was to protect the public from dishonest real estate agents.[2] It was not the purpose of the law to govern the legal relationships of joint owners of property,[3] agents,[4] corporate officers [5] or partners.[6]

The real estate listing contract is but an employment contract between the broker and an individual who agrees to pay his commission. Its validity merely rests upon a written instrument describing the property, the price and commission to be paid, the period of its existence and signed by the person who agrees to pay the commission.

---

[1] *Thorp Sales Corp. v. Lease* (1971), 53 Wis. 2d 195, 191 N. W. 2d 885.

[2] *Hilboldt v. Wisconsin Real Estate Brokers' Board* (1965), 28 Wis. 2d 474, 484, 137 N. W. 2d 482.

[3] *Genske v. Leutner* (1926), 191 Wis. 125, 210 N. W. 369.

[4] *Thorp Sales Corp. v. Lease, supra.*

[5] *Grieb & Erickson, Inc. v. Estberg* (1925), 186 Wis. 174, 202 N. W. 331.

[6] *Roberts v. Goodlad* (1918), 167 Wis. 318, 166 N. W. 646.

There is no need that all the owners of the property join in such an instrument. In fact, the person subscribing thereto need not even be an owner of the property.[7]

In the instant action, the jury found that there existed a valid real estate listing contract between the parties herein. We think there is ample credible evidence to support such a finding. The signing of the contract by but one of the co-owners of the property involved is sufficient to bind the subscriber thereto to payment of the commission previously agreed to.

*Performance of services.*

The defendant next contends that the plaintiff failed to perform the required services of procuring a purchaser and thus defendant was not liable for payment of the commission.

This court has held that a broker, employed to "procure a purchaser" for real estate, has earned his commission when he produces a person ready, willing and able to purchase upon the terms specified by the owner in the listing contract.[8] The right to commission arises when there is a meeting of the minds of the principal and the customer produced by the broker.[9] The listing contract whereby the broker contracts to "procure a purchaser" does not require final consummation of the sale.[10]

Generally it is stated that when a real estate broker procures a purchaser and a valid and enforceable contract is entered into between them the commission for procuring a purchaser is earned, even though the purchaser may later default.

---

[7] *Buroff v. Bergmann* (1919), 170 Wis. 316, 174 N. W. 901; *Mikkelson v. Faber* (1928), 195 Wis. 64, 217 N. W. 702.

[8] *Peter M. Chalik & Associates v. Hermes* (1972), 56 Wis. 2d 151, 157, 201 N. W. 2d 514.

[9] *Wauwatosa Realty Co. v. Paar* (1956), 274 Wis. 7, 14, 15, 79 N. W. 2d 125.

[10] *Id.* at page 15.

"The courts are practically unanimous in holding that a broker employed to sell or exchange lands earns his commission, unless the contract of employment contains a stipulation to the contrary, when a customer and the employer enter into a valid and binding contract for the sale or the exchange of lands." [11]

The defendant contends that a "meeting of the minds" or a "valid and binding contract for the purchase of real estate" is required to establish the broker's right to a commission and that the instant offer which the buyer accepted was illusory and unenforceable therefore, the plaintiff has not procured a purchaser so as to become eligible for his commission. We do not agree.

Initially it must be remembered that the jury concluded that the plaintiff procured a purchaser for the real estate in question. Such a finding is supported by the credible evidence. The effecting of a valid and binding contract is but an indicia of the fact that a purchaser has been procured. There is no requirement that a sale be consummated. *Wauwatosa Realty Co. v. Paar, supra.*

"In the absence of any express stipulation requiring the broker to procure a binding written contract from the customer in order to be entitled to his commission, most of the courts have considered it unnecessary to a complete performance on the part of the broker that he procure such a contract, provided that the surrounding circumstances are such that the employer is in a position to execute it himself . . . ." [12]

Even if it were required that the plaintiff-broker procure a binding contract between the defendant and the purchaser, such a requirement would not have avoided liability on the part of defendant.

The plaintiff's successful completion of a sale of the real estate in question was defeated through the actions

---

[11] *Kruger v. Wesner* (1956), 274 Wis. 40, 44, 79 N. W. 2d 354.
[12] 12 Am. Jur. 2d, *Brokers*, p. 934, sec. 192.

of the defendant and his tenant in prohibiting the further testing of the real estate and failing to terminate the enforceable five-year lease thereof.

". . . [I]t would be manifestly unjust that the principal could avoid paying a commission fairly earned if by his own fault or misconduct or wrongful neglect he has prevented the consummation of his contract with the buyer, and the courts will not sanction such injustice." [13]

The defendant also argued that the trial court erred in failing to submit the defendant's requested questions to the special verdict of the jury. We do not agree. Framing of the special verdict is the duty of the trial court which has considerable discretion. [14] The special verdict in the present case properly framed the questions in terms of ultimate fact and it was not error to refuse to incorporate the defendant's requested questions in the special verdict.

*By the Court.*—Judgment affirmed.

[13] *Dean v. Wendeberg* (1921), 175 Wis. 513, 515, 516, 185 N. W. 514.
[14] *Williams v. Williams* (1933), 210 Wis. 304, 246 N. W. 322; *Henrikson v. Maryland Casualty Co.* (1958), 3 Wis. 2d 379, 88 N. W. 2d 729.