PATIENCE DRAKE ROGGENSACK, C.J.
¶ 96. (concurring). The majority opinion sets the question upon which Re/Max Select, LLC's entitlement to a broker's commission turns as: "whether the purchase contract between Ash Park and Alexander & Bishop constitutes an 'enforceable contract' within the meaning of the listing contract."[1] I would phrase the question to be decided as follows: whether the listing contract between Re/Max and Ash Park, LLC, two sophisticated business entities, demonstrates that they agreed that closing on a sale of the listed property was not required before the right to a realtor's commission arose. I answer that question, "yes." However, because I have grave concerns about the majority opinion being erroneously employed to shift the burden to investigate the financial ability of a proposed purchaser from the broker to an unsophisticated seller, I write in concurrence to the majority opinion.
I. BACKGROUND
¶ 97. The majority opinion fully sets out the facts that underlie the dispute before us. Therefore, I will not repeat them.
*730 II. DISCUSSION
A. Standard of Review
¶ 98. This review centers on interpreting and applying a single party listing contract for the sale of vacant land. Interpretation of a written contract is a question of law that we review independently of the court of appeals and the circuit court while benefitting from their discussions. Anthony Gagliano & Co. v. Openfirst, LLC, 2014 WI 65, ¶ 32, 355 Wis. 2d 258, 850 N.W.2d 845.
B. Listing Contract Principles
¶ 99. There are two lines of cases that run on somewhat parallel, but different, tracks when the right to a commission is alleged to arise out of a real estate listing contract. One line of cases conditions the right to a commission on the broker procuring a purchaser who is "ready, willing, and able to purchase upon the terms specified by the owner in the brokerage contract." Grinde v. Chipman, 175 Wis. 376, 377, 185 N.W. 288 (1921). "Able" includes the purchaser's "financial ability to proceed." Peter M. Chalik & Assocs. v. Hermes, 56 Wis. 2d 151, 160, 201 N.W.2d 514 (1972). We have reasoned that:
Generally speaking, a purchaser is financially ready and able to buy: (1) If he has the needed cash in hand, or (2) if he is personally possessed of assets —which in part may consist of the property to be purchased — and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, or (3) if he has definitely arranged to raise the necessary money — or as much thereof as he is unable to supply personally — by ob *731 taining a binding commitment for a loan to him for that purpose by a financially able third party, irrespective of whether such loan be secured in part by the property to be purchased.
Id. at 162 (internal quotation marks and citation omitted).
¶ 100. Therefore, not just any purchaser who signs an offer to purchase on terms acceptable to the seller will fulfill the criteria necessary for a broker to earn a commission. Stated otherwise, when a purchaser is unable to perform financially, the seller has a defense to payment of a commission. Id. at 162-63.
¶ 101. The other line of cases is cited in the majority opinion. Those cases generally conclude that the right to a commission turns on whether the realtor provided a party who entered into a binding contract to purchase the real estate. For example, in Wauwatosa Realty Co. v. Paar, 274 Wis. 7, 79 N.W.2d 125 (1956), we upheld the right to a commission for the broker even though the sale of the real estate never closed. We reasoned that:
The right of a broker to compensation accrues on completion of negotiations and on a meeting of the minds of the principal and the customer procured by the broker; but, unless provided otherwise in the contract of employment, it is not dependent on the final consummation of the transaction or the performance of the agreement entered into between the principal and the customer.
Id. at 14 — 15.
¶ 102. The above quote from Wauwatosa Realty is interesting because we began our discussion in Wauwatosa Realty by saying that, "[t]he question involved on this appeal is whether the plaintiff real- *732 estate broker procured a purchaser ready, willing, and able to purchase the defendants' real estate pursuant to the terms of its listing contract so as to entitle the plaintiff to a broker's commission." Id. at 10. However, we never assessed whether the purchaser had the financial ability to complete the purchase contract.
¶ 103. In Kruger v. Wesner, 274 Wis. 40, 79 N.W.2d 354 (1956), where no sale occurred, we concluded that the realtor was due a commission, and we opined that:
It may be generally stated that when a real-estate broker procures a purchaser who is accepted by the owner, and a valid contract is drawn up between them, the commission for finding such purchaser is earned, although the purchaser later defaults for no known reason .. .; or because the purchaser deliberately refuses to consummate the contract. . .; or because of financial inability of purchaser to comply with the contract.
Id. at 44 (emphasis added).
¶ 104. The emphasized part of the above quote is a significant departure from the line of cases that requires a purchaser to be financially "able" to complete the sale before a commission is due the broker. See, e.g., Chalik, 56 Wis. 2d at 163. Yet, in Kruger, we gave no indication that we were intent on changing prior law. Rather, Kruger appears to be an extension of Wauwatosa Realty upon which Kruger says that it relies.[2] Kruger, 274 Wis. at 44.
¶ 105. In Winston v. Minkin, 63 Wis. 2d 46, 216 N.W.2d 38 (1974), we set out the dispositive issue as, *733 "[w]hether the plaintiff procured a buyer ready, willing and able to purchase upon the terms specified by the owner in the listing contract or acceptable to him." Id. at 49. However, once again, notwithstanding our statement of the issue, we reasoned that "when a real estate broker procures a purchaser and a valid and enforceable contract is entered into between them the commission for procuring a purchaser is earned, even though the purchaser may later default." Id. at 51. Accordingly, we followed the change noted above in Kruger, even though we continued to give lip service to the "ready, willing and able" language of the earlier cases. Stated otherwise, Winston continued to shift the responsibility to investigate the financial ability of the proposed purchaser from the broker to the seller.
¶ 106. Why did we make this change? It appears that in Kruger, we concluded that the seller had a "reasonable opportunity to investigate" the purchaser's financial ability to proceed, and if the seller needed additional assurances of the purchaser being "able" to close on the sale, it was the seller's obligation to obtain whatever assurances he needed before entering into a binding contract with him. See Kruger, 274 Wis. at 45.
¶ 107. Imposing the responsibility to investigate the financial ability of a proposed purchaser onto a sophisticated seller may have been a sufficient reason for this shift of responsibility from the broker to the seller. However, I have grave doubts that this shift, in responsibility is fair to the unsophisticated seller of real estate, who signs a standard form listing contract believing he or she will pay any commission due under the listing contract from the proceeds of a sale that the broker facilitates.
*734 C. Re/Max-Ash Park Listing Contract
¶ 108. Re/Max's claim comes from the listing contract that Ash Park signed. In regard to Re/Max's right to a commission, the listing contract provides in relevant part:
COMMISSION: Seller shall pay Broker's commission, which shall be earned if, during the term of this Listing:
1) Seller sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property;
5) A purchaser is procured for the Property by Broker, by Seller, or by any other person, at the price and on substantially the same terms set forth in this Listing and in the standard provisions of the current WB-13 VACANT LAND OFFER TO PURCHASE, even if Seller does not accept this purchaser's offer.
PROCURE: A purchaser is procured when a valid and binding contract of sale is entered into between the Seller and the purchaser or when a ready, willing and able purchaser submits a written offer at the price and on substantially the terms specified in this Listing. A purchaser is ready, willing and able when the purchaser submitting the written offer has the ability to complete the purchaser's obligations under the written offer.
(emphasis added).
¶ 109. Re/Max asserts that pursuant to the listing contract, the Ash Park — Alexander & Bishop contract is an enforceable contract entitling it to a corn- *735 mission under conditions 1 and 5 above, and that it has "procured" a purchaser because Ash Park and Alexander & Bishop entered into a binding contract for the purchase of the listed real estate. The listing contract's definition of "procuring," which includes providing a purchaser who is "ready, willing and able" to complete the sale is an alternative to, not an addition to, entering into an enforceable contract. Therefore, under the listing contract, the right to a commission ripens when an enforceable contract is entered into, even if the purchaser is financially unable to complete the purchase. In sum, the listing contract sets a condition for earning a commission as follows: whether Ash Park and Alexander & Bishop entered into an enforceable contract.
¶ 110. By our decision affirming an order of specific performance of the Ash Park-Alexander & Bishop sales contract, we previously concluded that their contract is an enforceable contract. Ash Park, LLC v. Alexander & Bishop, Ltd., 2010 WI 44, ¶ 96, 324 Wis. 2d 703, 783 N.W.2d 294. Accordingly, I have no trouble concluding that the same contract remains "enforceable" when we are interpreting the listing contract. However, I have concerns about having the enforceability of the purchase contract be the end of our discussion.
¶ 111. Those concerns arise here because of the circuit court's finding that Alexander & Bishop was financially unable to perform,[3] and because of repre *736 sentations that Ash Park settled its lawsuit against Alexander & Bishop because of Alexander & Bishop's insolvency.[4] However, of greater concern to me is the unsophisticated seller of real estate who may not understand the import of the provisions of the WB-13 listing contract as it affects his or her obligation to pay a real estate commission.
¶ 112. Here, Ash Park is a sophisticated business entity, represented by able counsel, with the ability and knowledge needed to investigate the financial wherewithal of Alexander & Bishop or to request modification of a listing contract to require closing on a sale before the right to a commission arises. That weighs in favor of affirming the court of appeals.
¶ 113. However, because I have concerns for the residential homeowner who lists his or her property using a standard form listing contract, without the aid of an attorney, and is unaware that he or she may be incurring an obligation to pay a commission when no sale occurs, I write in concurrence to draw attention to *737 the potential hardship our decision is capable of producing if it is erroneously applied in a different context to an unsophisticated seller of real estate.
III. CONCLUSION
¶ 114. Because the question to be decided occurs in the context of a listing contract between two sophisticated business entities, Re/Max and Ash Park, I conclude that the listing contract demonstrates that they agreed that closing on a sale of the listed property was not required before the right to a realtor's commission arose. However, I have grave concerns about the majority opinion being erroneously employed to shift the burden to investigate the financial ability of a proposed purchaser from the broker to an unsophisticated seller. Therefore, I write in concurrence to the majority opinion.

 Majority op., ¶ 32.

 I note that Justice Steinle wrote both the opinion in Wauwatosa Realty Co. v. Paar, 274 Wis. 7, 79 N.W.2d 125 (1956) and the opinion in Kruger v. Wesner, 274 Wis. 40, 79 N.W.2d 354 (1956).

 "The reality of it is the realtor brought to these sellers a buyer who couldn't afford to buy the property. And in the end it was the buyer's inability to be able to buy the property, he couldn't get financing for it, he didn't have enough money in a bank account, he didn't have a deep enough pocket to go to, he couldn't do it." *736 Transcript of Motion Hearing at 14, Ash Park, LLC v. Alexander & Bishop, Ltd., No. 07CV2832 (Brown Cnty. Cir. Ct., June 13, 2011).

 Alexander & Bishop represented: "Ash Park and its principal is aware that Alexander & Bishop has no liquid assets in which to specifically perform — that is why it accepted the settlement agreement which called for a $1.2 million dollar payment to be made by the way of a loan. [ ] It also received numerous letters from Banks demonstrating that they would not be willing to loan money to Alexander & Bishop to buy the property."
Brief in Opposition of Motions for Contempt and Appointment of a Receiver and in Support of Motion to Enforce Settlement Agreement at 6-7, Ash Park, LLC v. Alexander & Bishop, Ltd., No. 07CV2832 (Brown Cnty. Cir. Ct., Feb. 14, 2011).