NORDALE REALTY COMPANY, Respondent, vs. HANEL and wife, Appellants.

*June 11—July 1, 1947.*

For the appellants there were briefs by *Affeldt & Lichtsinn,* attorneys, and *Eldred Dede* of counsel, and oral argument by *Robert G. Kroncke,* all of Milwaukee.

*Ward Dunphy* of Milwaukee, for the respondent.

WICKHEM, J. Defendants, husband and wife, have for years been the owners of a parcel of land in the town of Granville. Upon this land are located a large filling station operated by Louis Hanel and a one-family, two-story residence immediately to the east of the station occupied by the Hanel family. The filling station and residence are numbered, respectively, 3432 and 3426 West Silver Spring drive. The service station had a showroom and various equipment consisting of a cash register, two gasoline pumps, a motor analyzer, battery charger, auto hoist, and certain stock kept by Hanel for retail sale. On December 6, 1944, defendants signed an exclusive listing contract in duplicate whereby they agreed to pay a commission of five per cent to plaintiff if a purchaser were produced during the life of the contract for the premises at 3432 West Silver Spring drive. This contract was to expire on March 6, 1945. On the same date defendants also signed

a similar contract covering the premises at 3426 West Silver Spring drive. This contract had the same expiration date. The terms of the contracts will be set forth later in this opinion.

Plaintiff contacted likely buyers, including Shell Oil Company, Inc., whose representative inspected the property. During the night before the expiration of the listing contract plaintiff mailed to defendants an offer by Shell requesting that such offer be accepted and returned to plaintiff's office on or before March 10th. On March 7th defendants rejected the offer and this litigation resulted.

Plaintiff contends that the Shell offer conformed to the contract and that by producing this offer it earned its commission. Defendants contend, (1) that the Shell offer did not conform to the terms specified in the listing contract; and (2) that the listing contract left terms of sale to be negotiated that were never settled. These contentions require an analysis of the listing contracts and a comparison between them and the Shell offer, but before doing that the law applicable to the situation should be briefly set forth.

It is well settled that if a listing contract specifies all of the terms of sale the broker in order to earn his commission must during the life of the listing contract produce a customer ready, able, and willing to buy upon those terms. It is also settled that when the principal has furnished the broker with only part of the terms with an understanding that further details are subject to negotiation between the principal and the prospective buyer the principal may terminate such negotiations without liability to the broker. See Restatement, 2 Agency, sec. 445; *Henschell v. J. L. Gates Land Co.* 146 Wis. 140, 131 N. W. 423; *Grinde v. Chipman,* 175 Wis. 376, 185 N. W. 288. It is also the rule that where the broker produces a purchaser with whom a contract of sale is ultimately consummated to the satisfaction of the seller there is a liability for a commission. *Burdon v. Briquelet,* 125 Wis. 341, 104 N. W. 83; *Bowe v.*

*Gage,* 127 Wis. 245, 106 N. W. 1074; *Edward H. Everett Co. v. Cumberland G. M. Co.* 112 Wis. 544, 88 N. W. 597.

It now becomes necessary to analyze the listing contracts and to compare them with the Shell offer. The listing contracts are printed documents drafted by plaintiff containing appropriate blanks for inserting the names of the parties, price asked, manner of payment. They also contain a list of those items which could conceivably be included in a sale of real estate with a direction to strike out items not to be included in the sale. One of the blanks follows a description of the property and its price and then proceeds as follows: "On the following terms: Cash." A blank runs to the margin of the paper. The next line commences with the printed word "Balance" and a blank runs to the margin. In these contracts, without striking the word "cash," the words "Terms to be arranged" were written in. The contracts are identical in this respect except that in one of the contracts the price for the residence property is listed on the reverse side and after the word "terms" is the writing "To be arranged." The contracts differ in the exclusion of items from the sale. For example, that applying to the filling-station property contains a deletion of screen doors and windows; storm doors and windows; window shades; curtain rods and fixtures; bathroom accessory fixtures; stoker; hot-water heater, electric refrigerator, electric range, carpeting in living room, dining room, hallways, and stairways, linoleum cemented to floor. That applying to the residence property deletes awnings, stoker, oil burner, electric refrigerator, electric range, carpeting in living room, dining room, hallways, and stairways. The offer of the Shell Oil Company describes both premises by metes and bounds and is a single offer for both pieces of property. It contains the following list of accessories included in the offer: "Screen doors and windows; storm doors and windows; awnings; electric-lighting fixtures, but not bulbs; window shades, curtain rods and fixtures; bath-

room accessory fixtures, oil burner; hot-water heater; lino-
leum cemented to floor; all shrubs and trees; also *one cash
register, three underground tanks, two gasoline pumps, one
motor analyzer, one battery charger, one auto hoist, one elec-
tric water pump and tank."* Screens, window shades, curtain
rods and fixtures, bathroom fixtures, hot-water heater, and
linoleum are included in the residence listing but not in that for
the filling station. Awnings and oil burner are included in the
filling-station listing but not in that for the residence. As to
these variations it may be that the offer can be treated as refer-
able to each contract of listing and in such a way as to constitute
an offer only for the items offered by each listing since in every
instance the item included is offered either in the listing con-
tract for the residence or that for the filling station. We shall
pass this question without deciding it.

There is, however, also included in the offer the following
items which are not in either of the listing contracts: "One
cash register, three underground tanks, two gasoline pumps,
one motor analyzer, one battery charger, one auto hoist, one
electric water pump and tank." There is also a proviso in the
offer that general taxes levied in the year 1945 shall be pro-
rated at the time of closing on the basis of general taxes for the
preceding year. The terms of purchase in the offer are cash
in full upon the delivery of a warranty deed. The offer is
plainly at variance with the listing contracts in the above re-
spects. In addition, terms of payment were to be negotiated
and a cash offer cannot as a matter of law satisfy this require-
ment. It is contended by plaintiff that since the word "cash"
was not stricken out in the listing contracts before writing the
words "terms to be arranged" the proper construction of the
listing contract is that the terms of payment were to be cash
*or* terms to be arranged. We think that this is not a proper
construction. As the contracts stand the printed term is at
variance with the writing and in such a case the rule of con-

struction is that the writing shall prevail. Further than this, in view of the fact that plaintiff drafted the contract it must be taken most strongly against plaintiff where there is an ambiguity in the instrument.

Fortifying our conclusion as to this construction is a notation on the back of one of the listing contracts in which a blank following the printed word "terms" is filled by a written notation "to be arranged." We think the proper construction of the listing contracts is that terms of payment were subject to negotiation. It was evidently the view of the trial court that a cash offer superseded all of the other terms of payment and that the seller was bound to accept such an offer because as a matter of law it would be more favorable to him than any other terms that can be arranged. We cannot agree to this conclusion. In this day of low interest and high income taxes sellers frequently prefer to have an instalment contract or a mortgage in order to dilute the capital-gains tax or to furnish a satisfactory investment security and a cash offer does not as a matter of law satisfy a provision that terms of payment are to be arranged.

We conclude, (1) that there was a variance between the listing contracts and the offer in that more property was included in the offer than in the contracts; (2) that the provisions of the offer with respect to proration of taxes constituted a variation; (3) that the terms of payment were left to future negotiations. In the light of these conclusions there is applicable the doctrine of cases heretofore cited to the effect, (1) that a broker's commission is not earned where the offer to buy is at variance with the terms specified by the seller; and (2) that where the listing contemplates negotiation of terms a commission is not earned until an agreement is reached upon these terms between the buyer and seller. Hence, we are of the view that plaintiff has shown no right to a commission.

It is further contended that defendants are estopped to set up the defenses heretofore referred to. Reliance is had upon

Restatement, 2 Agency, sec. 446, to the effect that, while an agent whose commission is dependent upon his production of a certain result within a specified time is not entitled to an agreed commission generally unless he achieves the result within such time, there is an exception where the principal in bad faith has prevented him from doing so. Plaintiff contends that by declining to negotiate in respect of the offer defendants estopped themselves from making any defense because the refusal was arbitrary and in bad faith. We think this contention is not sound. This is not a case where a principal has in bad faith prolonged negotiations until the time limit of the commission contract expires or where the acts of the listing principal prevented the broker from achieving the sale within the time limit of the contract. The offer was transmitted to defendants on the night of the day the listing contract expired and unless the offer precisely conformed to the listing contract there was no possibility of negotiations that would complete a sale within the life of the listing contract. In this connection see *McCune v. Badger,* 126 Wis. 186, 105 N. W. 667. It appears to us that there was no obligation on the part of defendants to continue the negotiations or to assign any reason for terminating them.

Plaintiff's final claim is that the questions heretofore considered and resolved in favor of defendants were not raised in the lower court and ought not to be considered upon this appeal. Examination of the pleadings shows that the answer raises these issues and the record discloses that the trial court in response to contentions of the parties determined, (1) that the property listed was identical with that to which the offer related; and (2) construed the phrase "terms to be arranged." The issue was sufficiently raised in the court below and is not raised here for the first time, although it is also true as stated by plaintiff that in addition defendants also contended in the lower court that the listing contracts were void for uncertainty.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.