LIBOWITZ, d/b/a ALDEN REALTY COMPANY, Respondent, v. LAKE NURSING HOME, INC., d/b/a PAULINE NURSING HOME, Appellant.*

*April 12—May 9, 1967.*

* Motion for rehearing denied, without costs, on June 30, 1967.

For the appellant there was a brief by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs.*

For the respondent there was a brief by *Charles L. Goldberg* and *Francis X. Krembs,* both of Milwaukee, and oral argument by *Mr. Krembs.*

HANLEY, J.  The complaint alleges that the plaintiff is a duly licensed real-estate broker and that on March 8, 1966, she entered into a listing contract for the nursing home premises owned by the defendant in Milwaukee. The complaint further alleges: That on March 16, 1966, the plaintiff obtained a written offer to purchase the

premises "upon the terms and conditions set forth in the aforesaid listing contract" from Marian A. Mickey and James P. Mickey and that said offer was submitted to the defendant; that the prospective purchasers at the request of the principal officer of the defendant executed an addendum to their offer of purchase; that on March 25, 1966, the prospective purchasers approved the operating statement of the Pauline Nursing Home and on that date resubmitted the aforesaid offer to purchase together with addendum to the defendant; that on March 28, 1966, the principal officer of the defendant rejected the offer "for the reason that, during the interim, it had received a cash offer from a third party to purchase the subject premises;" and that thereafter the plaintiff demanded and the defendant has refused to pay the sum of $10,500, that sum representing the commission that the plaintiff was to receive pursuant to the listing contract.

Defendant contends: (1) That the Mickey offer submitted by the broker contained material variances from the terms specified in the listing contract; (2) that the listing agreement left the full terms of the proposed land contract indefinite, thus leaving those details open for negotiation and entitling the defendant to break off negotiations without liability to the plaintiff-respondent broker; (3) that the complaint fails to allege that the proposed buyers were able to perform either in accordance with their offer or with the terms of the listing contract.

When this court reviews an order overruling a demurrer made on the ground that the complaint did not state facts sufficient to constitute a cause of action, it gives the complaint a liberal construction in favor of stating a cause of action. *Superior Plumbing Co. v. Tefs* (1965), 27 Wis. (2d) 434, 438, 134 N. W. (2d) 430; *Schlicht v. Thesing* (1964), 25 Wis. (2d) 436, 441, 130 N. W. (2d) 763. The "allegations of fact in the . . . complaint . . . must be taken as true. . . ." *Uihlein v. Rosenberg*

(1949), 255 Wis. 412, 416, 39 N. W. (2d) 389, and ". . . every reasonable intendment and presumption is to be made in favor of the complaint and the plaintiff is entitled to all reasonable inferences which can be drawn from the facts pleaded. *Christenson & Arndt, Inc., v. Wisconsin Telephone Co.* (1953), 264 Wis. 238, 243, 58 N. W. (2d) 682." *Conrad v. Evans* (1955), 269 Wis. 387, 390, 69 N. W. (2d) 478.

The listing contract, reference to which is made in the complaint, provides that "If . . . a purchaser procured by the Broker . . . at the price and upon the terms specified herein, or at any other terms and price accepted by the undersigned Seller, during the term of this contract . . . the Seller agrees to pay Broker a commission of Six per cent (6%) of the sale price."

The purchase price was set at $175,000 and the terms specified are:

"On the following terms: Cash: Will accept $20,000.00 Balance   Will take back a Land Contract for balance at interest rate from 6% to 6½%, for a period of eight years maximum."

It is well settled that:

"To entitle a broker to his compensation or commissions, he must accomplish what he undertook to do in his contract of employment, for, as a rule, nothing short of that is sufficient to constitute a performance upon his part. He is never entitled to compensation for unsuccessful efforts under his contract of employment. Accordingly, in every case reference must be had to the terms of that particular employment in order to determine whether or not a broker's duties have been performed, . . ." 12 Am. Jur. (2d), Brokers, pp. 921, 922, sec. 182.

This court follows the generally established rule that:

"A broker employed to 'procure a purchaser' for real estate is entitled to his commission when he produces a person ready, willing, and able to purchase upon terms

specified by the owner in the brokerage contract. 'To sell' or 'to procure a purchaser' are synonymous terms when used in a real-estate broker's contract. *Grinde v. Chipman* (1921), 175 Wis. 376, 378, 185 N. W. 288." *Niske v. Nackman* (1956), 273 Wis. 69, 75, 76 N. W. (2d) 591; *Wauwatosa Realty Co. v. Paar* (1956), 274 Wis. 7, 14, 79 N. W. (2d) 125; *Levine v. Mueller* (1930), 201 Wis. 633, 231 N. W. 182.

See also for statements of this rule 12 Am. Jur. (2d), Brokers, p. 922, sec. 183, Procuring person ready, able, and willing to perform; 12 C. J. S., Brokers, p. 187, sec. 85, Ability, Readiness, and Willingness of Customer to Consummate Transaction; Seavey, Law of Agency, (hornbook series), p. 274, sec. 171.

"It is well settled that if a listing contract specifies all of the terms of sale the broker in order to earn his commission must during the life of the listing contract produce a customer ready, able, and willing to buy upon those terms. . . ." *Nordale Realty Co. v. Hanel* (1947), 251 Wis. 136, 138, 28 N. W. (2d) 245.

Undoubtedly, a principal is free to reject, without liability to his broker, an offer that does not conform to the terms that he has previously specified in his listing contract. However, Wisconsin also accepts the rule that:

"Regardless of whether the principal, at the time of his refusal to consummate the transaction, states some grounds or no grounds for such refusal, a particular ground not specified by him at that time is waived and cannot be urged by him when sued for- a commission . . . ." 12 C. J. S., Brokers, p. 224, sec. 95.

*Moss v. Warns* (1944), 245 Wis. 587, 591, 15 N. W. (2d) 786. An annotation on the *Moss v. Warns Case*, appearing at Anno. 156 A. L. R. 602, states the general rule in these terms:

"As a general rule, where a landowner who has listed property for sale with a real-estate broker refuses to

accept an offer which is substantially in accordance with the listing, he cannot afterwards defend the broker's action for compensation on a ground not specified when rejecting the offer."

An important qualification to the *Moss v. Warns* principle was made by this court in *Kleven v. Cities Service Oil Co.* (1964), 22 Wis. (2d) 437, 444, 126 N. W. (2d) 64. Noting that the reason for holding a principal liable for his broker's commission when he rejects an offer containing variances from the terms of the listing contract without calling these variances to the attention of his broker is "that fair dealing on the owner's part requires that he point out such variance so that the broker may be afforded an opportunity of correcting it." [1] The court went on to state:

". . . However, where the variance is a substantial one, such as one that is directly in conflict with a material provision of the listing contract, there has been no substantial performance by the broker which would entitle him to his commission, absent acceptance of the offer by the owner. The broker is chargeable with knowledge that such substantial variance exists when he submits the offer, and, therefore, the owner should be under no duty to point this variance out to the broker in rejecting the offer."

Summarizing these rules as they apply to the case at hand, the complaint would be demurrable on the ground of failing to state a cause of action if, in spite of liberal construction principles, it alleged variations between the terms of the listing contract and the offer that were: 1. Substantial variations, *i.e.*, "directly in conflict with a material provision of the listing contract;" 2. insub-

---

[1] Corbin notes this general rule and observes: ". . . These decisions can usually be justified either on the ground that the variation is immaterial or on the ground that the owner's refusal deprives the broker of an opportunity to cure the defect." 3A Corbin, Contracts, p. 529, sec. 762.

stantial, but called to the attention of the broker; or, 3. insubstantial, but of such a nature that they could not have been remedied by the broker anyway.

The only terms specified in the listing agreement were: A purchase price of $175,000; and "Cash: Will accept $20,000.00 Balance Will take back a Land Contract for balance at interest rate from 6% to 6½%, for a period of eight years maximum."

The defendant maintains that the following terms of the offer constitute substantial variations from these terms of the listing agreement:

1. The offer specifically split the $175,000 purchase price into $20,000 for stock, good will, fixtures and equipment, and $155,000 for the real estate. With respect to this term of the offer the defendant argues that the division of the sale price could have an adverse effect upon the seller's tax picture. However, the offer was for the total purchase price specified in the listing contract, and the terms of the contract were silent as to any particular allocation of the purchase price between real estate and depreciables. The prospective buyer would have no reason to suspect that such a term was directly in conflict with a material provision.

2. The offer provided that the interest should be computed monthly and "shall be the same as the interest Seller shall be required to pay on its mortgage. However, Buyers shall not be required to pay more than 6½% per annum. . . ." We believe this term is reconcilable with the provisions in the listing contract that the owner was to "take back a land contract at 6% to 6½%."

3. The offer was "contingent upon the ability of Buyer to obtain all requisite permits and licenses for the operation of a nursing home . . . ." This provision in no way conflicts with any express term contained in the listing contract, nor would it change in any way what or how the prospective buyer would be required to purchase the property. Furthermore, giving the listing con-

tract the required liberal construction would exclude the inference that it contains the implied term that a prospective purchaser must agree to buy the operating nursing home regardless of whether or not he could legally operate it. Therefore, the statement of this condition to the offer would also not be in conflict with any obvious material, but yet, unexpressed, term of the listing contract.

4. The offer required the seller to agree "to refrain from employing its present administrator, Miss Chase, for a period of one (1) year from date of land contract." Again this provision conflicts with no express term found in the listing contract. Furthermore, the listing contract specified that the "good will" of the nursing home was to be included with the property to be sold and a liberal construction of the term "good will" could include the understanding that key personnel would not be hired away by the seller for a reasonable period of time.

5. The offer requires the seller "to convey . . . plans and specifications for expansion of the building which Seller previously had prepared and which Seller represents have been paid for in full." This provision does not conflict with any terms found in the listing contract. Furthermore, the plans would be of no value to the owner once the building was sold, and the delivery of the plans could be included within a liberal construction of the terms "stock in trade" and "good will."

6. The offer explicitly sets forth the corresponding rights and obligations of the parties "in the event the premises shall be damaged by fire or elements prior to time of closing." The listing contract was silent on this subject so the terms are not in conflict with any of its provisions. Therefore, they do not constitute a substantial variation so as to relieve the seller of the obligation of calling the variation to the attention of the broker before rejecting the entire offer.

7. The offer required the seller to furnish "an owner's policy of title insurance in the amount of the full purchase price, naming the Buyers as the assureds." The listing contract provides that the seller would furnish either an abstract of title or an owner's policy of title insurance. We believe that the requirement of an owner's policy of title insurance conforms to the owner's agreement under the listing contract. A liberal interpretation of the term would give the buyer the choice rather than the seller.

With respect to all of the above alleged variations it should be said: First, that all appear to be inherently capable of correction, and, secondly, that nowhere on the face of the complaint or the exhibits incorporated therein does it appear that the defendant made any attempt to point out objectionable variations to either the broker or the prospective purchasers. The complaint alleges that the only reason given by the defendant was that "it had received a cash offer from a third party to purchase the subject premises." Therefore, unless the variations directly conflict with the material provisions of the listing contract, their allegation is not fatal to the statement of a good cause of action. We are satisfied that from a review of the variations objected to by the defendant none of them are directly in conflict with the material provisions of the listing contract.

We now come to the question of whether the listing contract's absence of detail regarding the proposed land contract relieved the seller from liability to his broker for rejecting an offer which attempted to supply some of the details.

The defendant points out that the listing contract simply states that the property was to be sold pursuant to the listing contract at an interest rate from six to six and one-half percent for a period of eight years, that the offer states various terms for the proposed land contract not specified in the listing contract and that

there are a number of other items which might normally be expected to be included within a land contract which are not covered either by the listing contract or by the proposed purchasers' offer. The defendant attempts to bring himself within the protection of the rule recognized by this court that:

". . . when the principal has furnished the broker with only part of the terms with an understanding that further details are subject to negotiation between the principal and the prospective buyer the principal may terminate such negotiations without liability to the broker. . . ." *Nordale Realty Co. v. Hanel, supra* (p. 138).

In enunciating this rule the supreme court cited Restatement, 2 Agency (2d), sec. 445, as authority. This section of the Restatement limits the operation of this rule to situations where the principal is acting in good faith in breaking off negotiations. See Restatement, 2 Agency (2d), p. 347, sec. 445, comment *d*.

In the instant case the principal made no attempt to negotiate the terms of the proposed land contract with the prospective purchaser procured by the broker and rejected the offer because of a cash deal with another. Allegations in the complaint support the inference that the principal did not break off negotiations in good faith because of inability to reach a satisfactory agreement with the prospective buyer, but rather in bad faith wholly refused even to consider negotiating these further details because of a desire to sell the property on different terms to another buyer.

Furthermore, the A. L. R. annotation on the *Moss v. Warns Case* cited above notes the following relevant general rule, at page 614:

"Frequently where property is given to a broker for sale there are many minor details concerning the closing of the deal or similar matters which are not specified in the listing of the property or in the offer to purchase. These include the time to be allowed for the title search

and passing of papers, the furnishing of an abstract of title, the time and place for passing the papers and making the payment, and the time for change of possession. It is generally held that a landowner cannot defend a broker's action for commissions on the ground that the offer contained provisions of that sort which were not contained in the listing agreement, or that the agreement was silent whereas the listing mentioned such matters, where the landowner did not specify such objections when rejecting the offer."

If the defendant is not barred from asserting his right to summarily break off negotiations because of his bad faith refusal even to begin negotiations, he should now be barred from asserting his right to refuse to accept a provision not contained in the listing agreement by reason of his previous failure to specify such an objection to the offer.

Defendant's last contention is that the complaint lacks a formal allegation that the prospective purchaser was ready, willing and able to meet the terms of the listing contract and of his offer. The general rule is that the complaint ordinarily must allege that the plaintiff-broker procured a ready, able and willing purchaser. 12 C. J. S., Brokers, p. 248, sec. 107 (b).

However, an explicitly recognized exception to this general rule is the situation where the principal "himself designated the person with whom the contract was to be negotiated." 12 C. J. S., Brokers, p. 249, sec. 107 (b).

The listing contract in the instant case specifies, "This listing pertains only to Mrs. Lester Mickey and James Mickey should they purchase this property."

Since the principal himself has designated in the listing contract the only person with whom the broker was permitted to negotiate the contract, the principal should now be estopped from challenging the complaint or defending the suit on the ground that the plaintiff did not allege that the buyer was ready, able and willing.

Furthermore, again the defendant must contend with the fact that he is alleged to have rejected the offer on grounds other than those he is now asserting. Although a minority view to the contrary is also noted, the annotation on the *Moss v. Warns Case,* at Anno. 156 A. L. R. 611, notes that a majority of jurisdictions considering the question hold that:

". . . where a landowner gives some other reason for refusing to accept offer to buy his land he cannot defend an action for compensation on the ground that the purchaser was not able to pay the amount offered. . . ."

Therefore, even if the defendant is not estopped from asserting this objection to the complaint, he must be found to have waived his right to assert the defense of inability, and hence the allegation of inability would be unnecessary to the statement of a good cause of action.

In any event, the complaint is entitled to the benefit of the general rule that:

". . . A complaint, when attacked by demurrer, should be liberally construed and sustained if it expressly or by reasonable inference states any cause of action. *Bembinster v. Aero Auto Parts* (1959), 7 Wis. (2d) 54, 95 N. W. (2d) 778." *Rogers v. Oconomowoc* (1962), 16 Wis. (2d) 621, 632, 115 N. W. (2d) 635.

Under this rule we think it can readily be inferred from the facts pleaded that the buyers who executed the offer to purchase had the ability to perform.

We conclude that none of the alleged variances is in conflict with any material provision of the listing contract, that the listing contract did not contemplate negotiation of terms except the inferential details of the land contract as distinguished from the expressed terms, and that it is readily inferable that the prospective purchasers had the ability to perform.

*By the Court.*—Order affirmed; cause remanded for further proceedings.

The following memorandum was filed June 30, 1967.

PER CURIAM (*on motion for rehearing*). The appellant contends that the court did not treat explicitly a term in the offer not found in the listing contract, which term the appellant asserts is a material variance from the listing contract. That term was that payments were due on the 25th of each month "unless payments from the Welfare Department are late," in which event they would be due four days after "such payments are received." As is the case with other alleged variances specifically treated in the opinion, the defendant specified no objection to this alleged variance when it rejected the offer to purchase. Thus the defendant is "barred from asserting his right to refuse to accept a provision not contained in the listing agreement by reason of his previous failure to specify such an objection to the offer." The other issues raised by the appellant on this motion for rehearing have been heretofore considered by the court and rejected.

The motion for rehearing is denied, without costs.