ANN WALSH BRADLEY, J.
*353 ¶ 1 The petitioner, Capital Cartage, Inc. (Capital Cartage), seeks review of an unpublished decision of the court of appeals affirming the circuit court's determination that real estate broker Mark McNally (McNally) is entitled to a commission pursuant to the listing contract between the parties.[1] Contrary to the court of appeals' determination, Capital Cartage asserts that McNally is not entitled to a commission because the offer to purchase McNally procured contains substantial variances from the seller's terms as set forth in the listing contract.
¶ 2 Specifically, Capital Cartage argues that three terms in the offer to purchase constitute substantial variances from the listing contract. Among these is a dispositive condition that Mary Hermanson, one of Capital Cartage's owners, continue to work for the business without pay for an undetermined period of time following the sale.
¶ 3 Capital Cartage further asserts that the court of appeals erroneously interpreted Libowitz v. Lake Nursing Home, Inc., 35 Wis. 2d 74, 150 N.W.2d 439 (1967). It alleges that Libowitz did not, as the court of appeals concluded, alter the standard for determining whether a substantial variance exists as set forth *354 by Kleven v. Cities Serv. Oil Co., 22 Wis. 2d 437, 126 N.W.2d 64 (1964).[2] Therefore, it contends that *38 McNally is not entitled to a commission because he did not procure an offer to purchase "at the price and on substantially the terms set forth" in the listing contract.
¶ 4 We conclude first that Kleven remains the law of this state with regard to determining whether a substantial variance exists between a listing contract and an offer to purchase. Although a term of the offer to purchase that is directly in conflict with the listing contract is a substantial variance, it is not the sole manner in which substantial variance may be shown. Kleven offered direct contradiction as an example, not as a limitation.
¶ 5 Applying this standard, we conclude that in the context of the sale of a business with real estate where the sale did not go through, the condition in the offer to purchase that Mary Hermanson continue to work for Capital Cartage without pay constitutes a substantial variance from the listing contract as a *355 matter of law. Consequently, we determine that McNally did not procure an offer to purchase "at the price and on substantially the terms set forth" in the listing contract and therefore is not entitled to a commission.
¶ 6 Accordingly, we reverse the court of appeals.
I
¶ 7 Mary and Rolyn Hermanson own Capital Cartage, a moving and storage business. Seeking to retire and sell the business with real estate, Mary Hermanson (Hermanson) met with McNally, a real estate broker. As a result of this meeting, McNally drafted a listing contract. He used the standard state form listing contract, labeled as a WB-6 Business Listing Contract.
¶ 8 The listing contract contained a provision setting forth the requirements that must be met for the broker to earn a commission. In relevant part, the contract provides:
Seller shall pay Broker's commission, which shall be earned if, during the term of this Listing ...[a]n offer to purchase is procured for the Business or included property by the Broker, by Seller, or by any other person, at the price and on substantially the terms set forth in this Listing and the standard provisions of the current [state form offer to purchase.]
¶ 9 The asking price for the business with real estate as reflected in the listing contract was $1.2 million.[3] Approximately three weeks after the listing *356 contract was executed, McNally procured an offer to purchase Capital Cartage from Steven Erickson (Erickson).
¶ 10 Prior to submitting an offer to purchase, Erickson presented a letter of intent to Hermanson. The letter of intent included, among others, the following three conditions for the sale:
*39 Lender required good faith deposit (approximately $7,500 for appraisal and other costs) is split between seller and buyer once financing is fully approved, commitment letter issued and appraisal ordered. Seller to be reimbursed in full for good faith deposit at closing.
Covenant agreements not to compete signed by Mary and Rolyn Hermanson (prior to close)[.]
Mary and Rolyn Hermanson agree to operate business as normal until acquisition takes place and for Mary to stay on full time and without pay for period outlined in proposed structure.[4]
¶ 11 Hermanson, dissatisfied with the letter of intent, sent an email to McNally objecting to the $1.2 million sale price. Instead, Hermanson sought a $1.4 million sale price.
¶ 12 As the letter of intent foreshadowed, Erickson's offer to purchase was for a price of $1.2 million. The offer to purchase was presented on the standard *357 state form "WB-16 Offer to Purchase-Business with Real Estate." Erickson, however, included an additional page, labeled as "Addendum A," which consisted of the last page of the letter of intent. Addendum A listed conditions for the sale, which included the three above conditions at issue here.
¶ 13 After receiving the offer, Mary and Rolyn Hermanson rejected the offer in a letter from their counsel to McNally. The letter stated in part:
Capital Cartage, Inc., has just concluded its Special Meeting of Shareholders at my office this afternoon. The Wisconsin statutes require that a majority vote of the shareholders is necessary to sell the business. The vote was called and the motion to approve the offer to purchase failed to achieve a majority of the shareholders' votes. Capital Cartage has decided not to sell its business at this time.
Hermanson did not provide any other reason for rejecting the offer.
¶ 14 Subsequently, McNally filed this lawsuit, alleging that Capital Cartage owed him a commission of $72,000 pursuant to the listing contract. He asserted that he had procured an offer "at the price and on substantially the terms set forth in this Listing[.]"
¶ 15 Capital Cartage answered the complaint and subsequently moved for judgment on the pleadings. It argued that no commission was due as a matter of law because there were substantial variances between the listing contract and the offer Erickson submitted. Capital Cartage cited six alleged variances, including the three conditions at issue.[5]
*358 ¶ 16 The circuit court denied the motion for judgment on the pleadings, explaining:
Whether the offer varies substantially from the terms of a listing contract is a question of fact that is in dispute in the *40 pleadings. Though the listing contract and the offer are undisputed and are part of the pleadings, whether the variances are substantial may depend upon other relevant facts concerning the transaction or the nature of the business being sold. The inclusion of some conditions in an offer may be a substantial variance in some circumstances and not in others[.]
¶ 17 The case proceeded to trial. As indicated in the circuit court's decision denying the motion for judgment on the pleadings, one of the issues at trial was whether the offer to purchase contained substantial variances from the listing contract.
¶ 18 At the jury instruction conference, following extensive discussion, the circuit court determined as a matter of law that the three conditions at issue were not substantial variances from the listing contract. The circuit court reasoned:
And I think 'substantial variance' has to mean inconsistent with or in direct conflict with. I don't think it can just be any variance, even any difference at *359 all-any difference at all between the listing contract and the offer. Not every variance is a substantial one. And where there's nothing in the contract on a topic and the offer proposes something, that's not a substantial variance as I read the case law.
¶ 19 Accordingly, the circuit court instructed the jury that "[t]he court has determined that as a matter of law that the provisions in the offer to purchase that the sellers share in the costs of appraisal, that the Hermansons sign non-compete agreements and that Ms. Hermanson continue to work for Capital Cartage after the sale are not substantial variances." The jury found in McNally's favor, requiring Capital Cartage to pay his commission.
¶ 20 Capital Cartage appealed, arguing that the circuit court erred by denying its motion for judgment on the pleadings. It further contended that the circuit court erred at the jury instruction conference by concluding, as a matter of law, that the three conditions at issue were not substantial variances from the listing contract.
¶ 21 The court of appeals affirmed the circuit court's entry of judgment on the jury's verdict. McNally v. Capital Cartage, Inc., No. 2015AP2627, unpublished slip op., 375 Wis.2d 798, 2017 WL 1504311 (Wis. Ct. App. Apr. 27, 2017). In an unpublished decision, the court of appeals concluded "that a substantial variance in this context is limited to variances in offers that directly conflict with express terms in the corresponding listing contract." Id., ¶ 3.
II
¶ 22 Capital Cartage argues that the circuit court erred by denying its motion for judgment on the pleadings and in the alternative, by instructing the *360 jury that the three conditions at issue are not substantial variances as a matter of law.
¶ 23 A judgment on the pleadings is essentially a summary judgment decision without affidavits and other supporting documents. Jares v. Ullrich, 2003 WI App 156, ¶ 8, 266 Wis. 2d 322, 667 N.W.2d 843. We determine first whether the complaint has stated a claim. Id. If so, we next examine the responsive pleading to ascertain whether an issue of material fact exists. Id. Judgment on the pleadings is proper only if there are no genuine issues of material fact. Town of Windsor v. Vill. of DeForest, 2003 WI App 114, ¶ 5, 265 Wis. 2d 591, 666 N.W.2d 31.
¶ 24 A factual issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
*41 Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co., 2002 WI 80, ¶ 18, 254 Wis. 2d 77, 646 N.W.2d 777 (citing Baxter v. DNR, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991) ). Whether judgment on the pleadings should be granted is a question of law we review independently of the determination made by the circuit court and court of appeals. Jares, 266 Wis. 2d 322, ¶ 8, 667 N.W.2d 843.
¶ 25 Likewise, whether jury instructions accurately state the applicable law presents a question of law which we review independently of the determinations rendered by the circuit court and court of appeals. State v. Beamon, 2013 WI 47, ¶ 18, 347 Wis. 2d 559, 830 N.W.2d 681.
¶ 26 The court of appeals correctly observed that the resolution of these two issues hinges on the same *361 legal question: whether the three conditions in the offer to purchase are substantial variances from the terms of the listing contract. McNally, No. 2015AP2627, ¶ 17. Thus, as did the court of appeals, we address this single question. We answer the question only in the context of a sale of a business with real estate where the sale did not go through.[6]
III
¶ 27 We begin our analysis by setting forth the evolution of the law regarding "substantial variance" between a listing contract and an offer to purchase. Next, we clarify the standard under which courts are to determine questions of substantial variance. Finally, we examine the conditions in the offer to purchase, applying the law as set forth.
A
¶ 28 Our examination of the law begins in 1944, with this court's decision in Moss v. Warns, 245 Wis. 587, 15 N.W.2d 786 (1944). In Moss, a seller of residential property entered into a listing contract with a broker. Id. at 588-89, 15 N.W.2d 786. The broker procured an offer to purchase the property. Id. at 589, 15 N.W.2d 786. Stating only, "[w]e decided not to sell. [A co-owner] would not consent to it," the seller rejected the offer. Id.
¶ 29 After the broker brought suit seeking a commission pursuant to the terms of the listing contract, the seller raised as a defense alleged "discrepancies *362 between some of the terms of sale specified in the listing agreement and the terms stated in [the] offer to purchase[.]" Id. at 590-91, 15 N.W.2d 786. The court concluded that the seller had waived any objection to the alleged discrepancies because the seller did not bring the discrepancies to the broker's attention when initially rejecting the offer. Id. at 591-92, 15 N.W.2d 786.
¶ 30 Moss thus established a rule that "[r]egardless of whether the principal, at the time of his refusal to consummate the transaction, states some grounds or no grounds for such refusal, a particular ground not specified by him at the time is waived and cannot be urged by him when sued [by a broker] for a commission." Id. at 591, 15 N.W.2d 786 (citing 12 C.J.S., Brokers, p. 224, § 95). In other words, the Moss court concluded that, in order for sellers to rely on discrepancies between the terms of an offer to purchase and the terms of a listing contract to relieve them from paying a broker's commission, sellers must bring their objections to the broker's attention.
¶ 31 The holding in Moss was subsequently limited by this court's decision in *42 Kleven, 22 Wis. 2d 437, 126 N.W.2d 64. In Kleven, as in Moss, a seller rejected an offer to purchase without giving a reason for doing so. Id. at 441, 126 N.W.2d 64.
¶ 32 The Kleven court concluded that sellers could reject an offer to purchase without giving a reason and without triggering a broker's entitlement to a commission if there were "substantial" variances between the terms of the listing contract and the terms of the offer. Id. at 444, 126 N.W.2d 64. The court reasoned that an insubstantial variance should be brought to a broker's attention to give the broker an opportunity to correct it. Id.
*363 ¶ 33 However, where the variance is substantial, "such as one that is directly in conflict with a material provision of the listing contract, there has been no substantial performance by the broker which would entitle him to his commission, absent acceptance of the offer by the owner." Id. In that situation, the broker is chargeable with knowledge that the substantial variance exists when the offer is submitted. Id. Therefore, "the owner should be under no duty to point this variance out to the broker in rejecting the offer." Id.
¶ 34 This court purported to apply Kleven in Libowitz, 35 Wis. 2d 74, 150 N.W.2d 439. The Libowitz court summarized the circumstances in which a seller will be relieved of paying a broker's commission following Kleven as follows:
Summarizing these rules as they apply to the case at hand, the complaint would be demurrable on the ground of failing to state a cause of action if, in spite of liberal construction principles, it alleged variations between the terms of the listing contract and the offer that were: 1. Substantial variations, i.e., 'directly in conflict with a material provision of the listing contract;' 2. Insubstantial, but called to the attention of the broker; or, 3. Insubstantial, but of such a nature that they could not have been remedied by the broker anyway.
Id. at 82-83, 150 N.W.2d 439.
¶ 35 The court of appeals in this case observed a difference in language between Kleven and Libowitz, to which it ascribed great import. Namely, Kleven used the phrase "such as" when explaining the meaning of "substantial variation," while Libowitz employed "i.e."
*364 McNally, No. 2015AP2627, ¶ 28 ; Kleven, 22 Wis. 2d at 444, 126 N.W.2d 64 ; Libowitz, 35 Wis. 2d at 82, 150 N.W.2d 439.
¶ 36 In the court of appeals' estimation, the case turns on this linguistic idiosyncrasy. It observed, "[t]he Kleven court's use of 'such as' ... indicated that there are variances that are substantial that do not involve a direct conflict between an offer and the listing contract. If the Kleven court had intended substantial variances to be limited to offer terms in direct conflict with listing terms, the sentence would read: 'where the variance is a substantial one, that is, one that is directly in conflict ...' " McNally, No. 2015AP2627, ¶ 25.
¶ 37 Accordingly, the court of appeals concluded "the supreme court in Libowitz modified the Kleven substantial variance language by replacing 'such as' with 'i.e.,' thus, in our view, doing what Kleven did not do. That is, Libowitz limited 'substantial variances' to those involving a direct conflict between the terms of the offer and the terms of the listing contract." Id., ¶ 26.
¶ 38 We disagree. There is no indication that the Libowitz court intended to modify Kleven. In contrast, when the Kleven court modified Moss, it explicitly stated that it was doing so. See Kleven, 22 Wis. 2d at 445, 126 N.W.2d 64 ("Upon the most careful consideration of the problem we are satisfied that, both with respect to the law which prevails in other jurisdictions, and our own analysis of what the law should *43 be, that the rule of Moss v. Warns [ ] should be confined to variances which are not substantial, and we so determine.").
¶ 39 "A court's decision to depart from precedent is not to be made casually. It must be explained carefully and fully to insure that the court is not acting *365 in an arbitrary or capricious manner. A court should not depart from precedent without sufficient justification." Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶ 94, 264 Wis. 2d 60, 665 N.W.2d 257 ; see Leitinger v. DBart, Inc., 2007 WI 84, ¶ 59, 302 Wis. 2d 110, 736 N.W.2d 1.
¶ 40 Libowitz provides no justification for departing from Kleven. It contains no explicit pronouncement that Kleven is no longer the standard. The Libowitz court thus evinces no clear intent to depart from Kleven. Instead, the use of "i.e." rather than "such as" or "e.g." appears to be an unfortunate and mistaken editorial choice.
¶ 41 Consequently, we conclude that Kleven remains the law of this state with regard to determining whether a substantial variance exists between the listing contract and the offer to purchase. Although a term of the offer to purchase that is directly in conflict with the listing contract is a substantial variance, it is not the sole manner in which substantial variance may be shown. Kleven offered direct contradiction as an example, not as a limitation.
¶ 42 Our decision in Peter M. Chalik & Assocs. v. Hermes, 56 Wis. 2d 151, 201 N.W.2d 514 (1972), is consistent with this result. Chalik was decided post- Libowitz, yet applies the standard from Kleven. Id. at 157-58, 201 N.W.2d 514 (directly quoting Kleven, 22 Wis. 2d at 444, 126 N.W.2d 64, by stating the "such as" standard). By neglecting to observe any conflict or tension between Kleven and Libowitz, the Chalik court implicitly concluded that they present the same standard.
¶ 43 Further, the pattern jury instruction on the topic also incorporates the Kleven standard. See JI-Civil *366 3086.[7] The jury instructions committee's comments cite both Chalik and Libowitz, again declining to observe any tension between the standards they present.
B
¶ 44 Having determined that the Kleven standard applies, we examine next the conditions in the offer to purchase at issue, applying the law as set forth above. Our analysis begins and ends with the condition that Hermanson work without pay for an undetermined period of time following the sale of Capital Cartage. Because we conclude that this condition constitutes a substantial variance, it is dispositive, and we need not address the other two alleged variances.
*44 ¶ 45 A review of the pleadings and attachments indicates that the offer to purchase contains the following condition: "Mary and Rolyn Hermanson agree to operate business as normal until acquisition takes place *367 and for Mary to stay on full time and without pay for period outlined in proposed structure." The "proposed structure" appears to be a reference to the letter of intent, which states: "Seller stays on fulltime for period of 3 months to ensure proper transition. Operates on part time basis at seller discretion for rest of 2014. Part time hourly rate after year 2014 to be negotiated."
¶ 46 However, the "proposed structure" is not part of the offer to purchase. Addendum A (the last page of the letter of intent) is the sole page of the letter of intent attached to the offer to purchase. The "proposed structure" to which it refers appears on the first page of the letter of intent and was neither attached to nor incorporated into the offer to purchase.[8] By itself the condition in the offer to purchase does not provide any "structure" or temporal limitation on the requirement that Hermanson provide free labor to Capital Cartage.
¶ 47 We recognize that often a determination of "substantiality" is a factual question for the jury. See JI-Civil 3086. However, here we can decide the question as a matter of law by examining the listing contract and offer to purchase only.[9]
*368 ¶ 48 In this case there is no factual determination for a jury to make for two reasons. First, Chalik establishes that a discrepancy in price between the listing contract and the offer to purchase may be a substantial variance as a matter of law. 56 Wis. 2d at 155, 201 N.W.2d 514. Second, the condition at issue here is so extraordinary that no reasonable jury could determine that it is not a substantial variance.
¶ 49 On the first point, our analysis begins with the long-recognized premise that Hermanson's labor has monetary value. See Garstka v. Russo, 37 Wis. 2d 146, 151, 154 N.W.2d 286 (1967) (referring to the "value" of labor); Hoernig v. Hoernig, 109 Wis. 229, 231, 85 N.W. 346 (1901) (explaining that labor was "conceded to [be] valuable"). By imposing a condition that Hermanson continue to work for Capital Cartage without pay following the sale of the business with real estate, Erickson saves an amount of money equal to the value of Hermanson's labor. In other words, by saving Erickson an amount of money equal to Hermanson's salary for the duration of her unpaid work, the purchase price of the business with real estate *45 is essentially lowered by that same amount.
¶ 50 As noted above, a variation in price between a listing contract and an offer to purchase may constitute a substantial variance as a matter of law. See Chalik, 56 Wis. 2d at 155, 201 N.W.2d 514. In Chalik, the court observed that the listing contract required a $28,000 *369 down payment, yet the offer to purchase incorporated a down payment of only $22,000. Id. The court determined that this discrepancy was a substantial variance. Id.
¶ 51 Likewise here, the condition in the offer to purchase that Hermanson work without pay constitutes a substantial variance from the terms of the listing contract as a matter of law. By including Hermanson's free labor and thus in totality proposing a price lower than that reflected in the listing contract, there exists a variance between the desired price as reflected in the listing contract and the price offered. We acknowledge that a specific monetary value for Hermanson's labor is not in the record. Whatever the total amount sufficient to compensate the holdover owner for her work, it likely would eclipse the $6,000 difference the Chalik court determined to be a substantial variance.[10]
¶ 52 Given the case law, this monetary difference by itself can represent a substantial variance, but we need not rely solely on it. We observe also that the situation here presented Hermanson with a Hobson's choice. If she wanted to complete the transaction, she was left with either working without pay for an undefined period of time or paying a $72,000 commission to McNally. This puts Hermanson in an extreme and unwinnable position.
*370 ¶ 53 A condition of sale requiring a business owner to provide her full time labor and expertise for an undefined period of time without any compensation whatsoever is an extraordinary departure from a listing contract that does not include any labor at all, paid or otherwise, as part of the sale. Even construing the pleadings liberally, this condition that Hermanson provide an unspecified amount of free labor is a significant outlier. There is thus no genuine issue of material fact because no reasonable jury could find that this condition in the offer to purchase constitutes anything other than a substantial variance from the terms of the listing contract. See Town of Windsor, 265 Wis. 2d 591, ¶ 5, 666 N.W.2d 31 (explaining that judgment on the pleadings is appropriate where there is no genuine issue of material fact).
¶ 54 Accordingly, the circuit court erred in denying Capital Cartage's motion for judgment on the pleadings.[11] By procuring an offer in substantial variance from the terms of the listing contract, there has been no substantial performance by McNally which would entitle him to a commission, absent Capital Cartage's acceptance of the offer. See Kleven, 22 Wis. 2d at 444, 126 N.W.2d 64.
¶ 55 In sum, Kleven remains the law of this state with regard to determining *46 whether a substantial variance exists between the listing contract and the offer to purchase. Applying the Kleven standard, we conclude, as a matter of law, that in the context of the sale of a business with real estate where the sale *371 did not go through,[12] the condition in the offer to purchase that Hermanson continue to work for Capital Cartage without pay constitutes a substantial variance from the listing contract. Consequently, we determine that McNally did not procure an offer to purchase "at the price and on substantially the terms set forth" in the listing contract and is not entitled to a commission.
¶ 56 Accordingly, we reverse the court of appeals.
By the Court. -The decision of the court of appeals is reversed.

McNally v. Capital Cartage, Inc., No. 2015AP2627, unpublished slip op., 375 Wis.2d 798, 2017 WL 1504311 (Wis. Ct. App. Apr. 27, 2017) (affirming order of circuit court for Dane County, Juan B. Colas, Judge).

In Kleven, we concluded that "where the variance is a substantial one, such as one that is directly in conflict with a material provision of the listing contract, there has been no substantial performance by the broker which would entitle him to his commission, absent acceptance of the offer by the owner." Kleven v. Cities Serv. Oil Co., 22 Wis. 2d 437, 444, 126 N.W.2d 64 (1964) (emphasis added).
In Libowitz, we stated that "the complaint would be demurrable on the ground of failing to state a cause of action if, in spite of liberal construction principles, it alleged variations between the terms of the listing contract and the offer that were: [ ] Substantial variations, i.e., 'directly in conflict with a material provision of the listing contract' ..." Libowitz v. Lake Nursing Home, Inc., 35 Wis. 2d 74, 82, 150 N.W.2d 439 (1967) (emphasis added).

Before the circuit court, Capital Cartage argued that the parties modified price in the listing contract from $1.2 million to $1.395 million. The jury rejected this argument, and Capital Cartage does not raise it before this court.

The "proposed structure" appears to be a reference to the first page of the letter of intent, which stated: "Seller stays on fulltime for period of 3 months to ensure proper transition. Operates on part time basis at seller discretion for rest of 2014. Part time hourly rate after year 2014 to be negotiated."

Capital Cartage also raised as alleged substantial variances the following:
Line 45 of Offer states: '... expenses incurred by Buyer in normal course of action.'
Tenants from Mustang Way property to be transferred to Cottonwood Drive property.
Assumption of leases associated with Mustang Way.
Capital Cartage does not raise these provisions as substantial variances before this court. Its argument before this court is limited to the three conditions at issue. See supra, ¶ 10.

The facts of this case present the sale of a business with real estate where the sale did not go through. Our conclusion here is circumscribed because the ramifications for other types of property sales with other factual scenarios are not before us. Accordingly, we limit our holding to the sale of a business with real estate where the sale did not go through.

JI-Civil 3086 provides in relevant part:
Before a real estate broker is entitled to any commission under a real estate listing contract, the broker must procure a purchaser who is ready, willing, and able to meet the express terms of the listing contract. (A seller has the right to reject an offer that does not conform to the terms specified in the listing contract. When a seller refuses to accept an offer which is substantially in accordance with the listing contract, but which contains variances from the terms of the listing contract, the seller to relieve himself or herself from liability for the broker's commission must, when rejecting the offer, point out the variances to the broker so that the broker may be afforded an opportunity to obtain an offer that does comply. However, where the variance is a substantial one, such as one that is directly in conflict with a material provision in the listing contract, then there has been no substantial performance by the broker which would entitle the broker to the commission and the owner is under no obligation to specify the reasons for rejection.)

The offer to purchase contains an integration clause: "This Offer ... contains the entire agreement of the Buyer and Seller regarding the transaction." In the presence of such a clause, the court is barred from considering extrinsic evidence of any prior or contemporaneous understandings or agreements between the parties. Tufail v. Midwest Hospitality, LLC, 2013 WI 62, ¶ 30, 348 Wis. 2d 631, 833 N.W.2d 586. Such a clause indicates that the entire agreement between the parties has been reduced to writing in the offer to purchase. Id., ¶ 31. The offer to purchase had attached a single page of the letter of intent, but not its entirety. Because of the integration clause, any parts of the letter of intent not attached to the offer are extrinsic and not to be considered.

Unlike the dissent, we do not consider the negotiations between Erickson and Capital Cartage or those parts of the letter of intent not incorporated into the offer to purchase. Erickson was not a party to the listing contract between Capital Cartage and McNally and negotiations between he and Capital Cartage cannot alter its terms. Likewise, the letter of intent is not binding. It is not signed and specifically states, "[t]his draft is nonbinding[.]" See Pinczkowski v. Milwaukee Cty., 2005 WI 161, ¶ 44, 286 Wis. 2d 339, 706 N.W.2d 642.

Kleven states that an offer term that is directly in conflict with a material provision of the listing contract constitutes a substantial variance. Kleven v. Cities Serv. Oil Co., 22 Wis. 2d 437, 444, 126 N.W.2d 64 (1964). We conclude that under the facts of this case, the variance is substantial as a matter of law. We do not address other factual situations where the difference in price between the offer to purchase and the listing contract may be deemed so de minimus as to not constitute a direct conflict with a material provision.

Our determination that judgment on the pleadings should have been granted is dispositive and we need not further discuss the alternative argument addressing the jury instruction.

We emphasize that our determination in this case is narrowly circumscribed by the particular facts at issue.