COURT OF APPEALS
DECISION
DATED AND FILED

October 17, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1537**

Cir. Ct. No. 2018CV1322

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

LLOYD N. JOHNSON,

PLAINTIFF-APPELLANT,

V.

THOMAS HARDING, DAVID MACHEREY, REMEDIOS AZCUETA, MILWAUKEE COUNTY MENTAL HEALTH COMPLEX, MILWAUKEE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES AND MILWAUKEE COUNTY,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: LINDSEY CANONIE GRADY, Judge. *Affirmed.*

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lloyd N. Johnson appeals an order dismissing his breach of contract claim against Drs. Thomas Harding and David Macherey, Remedios Azcueta, the Milwaukee County Mental Health Complex ("MHC"), Milwaukee County Department of Health and Human Services ("DHHS"), and Milwaukee County (collectively, "the Defendants"). Johnson alleged that the Milwaukee County Mental Health Division Voluntary Application and Treatment Agreement ("Agreement") with MHC was an enforceable contract for medical care that was breached by the Defendants. The circuit court concluded that the Agreement was too indefinite to be an enforceable contract and that Johnson's breach of contract claim was duplicative of his negligence claims. The circuit court granted the Defendants' motion for judgment on the pleadings as to Johnson's breach of contract claim, and upon review, we affirm.

## BACKGROUND

¶2 On February 28, 2012, Johnson voluntarily presented himself to MHC complaining of depression, suicidal ideations, paranoia, auditory hallucinations, delusions of guilt, shame, and other psychotic symptoms. On February 29, 2012, the Defendants medically cleared and discharged Johnson from MHC. On March 3, 2012, Johnson was admitted to Froedtert Memorial Lutheran Hospital ("Froedtert") because he had severed both of his testicles and earlobes and cut his penis with a pair of scissors. Johnson remained at Froedtert for five days.

¶3 On March 8, 2012, Johnson was transferred to MHC. Upon admission, a nurse noted that Johnson was at risk for self-mutilation and had a history of impulsive acts and self-harm. The nurse recommended that Johnson should be evaluated for one-on-one ("1:1") monitoring to prevent serious self-

harm and that there was a need to be careful about Johnson's access to dangerous items.

¶4     At MHC, Johnson was placed on a 1:1 observation level by the doctor that had previously medically cleared and discharged him on February 29, 2012. The doctor stated in a memo, "Please place on one to one and in own room with I&O [Input & Output]." Between March 9, 2012, and March 15, 2012, Dr. Macherey and a registered nurse at MHC recorded numerous instances in which Johnson reported a continued urge to self-mutilate and remove his penis. Between March 12, 2012 and March 14, 2012, Dr. Macherey documented that Johnson had repeatedly talked about "finishing the job," referring to removing his genitals, and Dr. Macherey continued to recommend behavioral 1:1 monitoring.

¶5     On March 13, 2012, Johnson and Dr. Macherey, for MHC, signed the Agreement. It provided:

> Believing my condition may be helped by inpatient psychiatric treatment, I hereby make application for voluntary admission to the Milwaukee County Health division.
>
> I understand that this admission is for diagnostic evaluation and/or treatment. By this application, I agree to participate in the evaluation and/or treatment plan developed for me.
>
> I further understand and have been told that I have the right to terminate this treatment agreement and leave the facility upon submitting a written or oral request to the treatment staff.
>
> I also understand that if (at any time of my request to leave) I am considered to be mentally ill, developmentally disabled, or drug dependent, considered a proper subject for treatment and meet a standard dangerousness, I can be detained by the Hospital, that no further treatment will be given without my consent, except in an emergency; and that there will be a hearing on my case by an officer of the court within 72 hours (exclusive of

Saturday, Sunday, and holidays), and the court will decide whether I should be detained further.

¶6 On March 15, 2012, Dr. Macherey ordered that Johnson continue behavioral 1:1 monitoring "for self-mutilating behavior," but on the same date, Dr. Macherey also ordered that behavioral 1:1 monitoring be discontinued. On March 18, 2012, Johnson had his wound dressing changed three separate times. During one of these dressing changes and when Johnson was not on 1:1 observation, Johnson accessed a pair of surgical scissors left in his room, which he then used to sever his penis.

¶7 On February 14, 2018,[1] Johnson sued the Defendants in Milwaukee County Circuit Court, and in an amended complaint filed on May 5, 2020, alleged the following causes of action: negligence (Counts I and II); violation of article I, section 6 of the Wisconsin Constitution (Count III); violation of Wisconsin's Safe Place Statute, WIS. STAT. § 101.11 (2021-22)[2] (Count IV); and breach of contract, i.e., breach of the Agreement (Count V). Johnson also asserted that the statutory cap on compensatory damages, WIS. STAT. § 893.80(3), violated equal protection and was therefore unconstitutional as applied to him.

¶8 On July 31, 2020, the Defendants filed a motion for partial judgment on the pleadings pursuant to WIS. STAT. § 802.06(3) seeking dismissal of Johnson's non-negligence claims, Counts III-V. In response, Johnson conceded his claims under Counts III and IV, and they were dismissed. In a separate written

---

[1] In 2014, Johnson filed suit in federal court alleging violations of 42 U.S.C. § 1983, but on January 18, 2018, the federal district court dismissed Johnson's federal claims with prejudice and relinquished jurisdiction over Johnson's remaining state law claims.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

4

decision and order, the circuit court granted the Defendants' motion with respect to Count V, and denied Johnson's demand for damages in excess of the statutory cap. The circuit court concluded that the Agreement was too indefinite to be an enforceable contract and that Johnson's contract claim was duplicative of his negligence claim.

¶9    The parties ultimately settled Johnson's remaining negligence claims for the statutory cap of $50,000, preserving Johnson's right to pursue any rights available to him via his breach of contract claim. The circuit court entered a final order of dismissal. Johnson appealed the circuit court's order solely as to the dismissal of his breach of contract claim.

¶10    For the reasons set forth below, we affirm.

## DISCUSSION

¶11    "An order granting judgment on the pleadings presents a question of law that is reviewed de novo." *Soderlund v. Zibolski*, 2016 WI App 6, ¶21, 366 Wis. 2d 579, 874 N.W.2d 561. In reviewing such orders, we first consider whether the complaint states a claim, and if so, we consider whether the responsive pleading creates a genuine issue of material fact. *McNally v. Capital Cartage, Inc.*, 2018 WI 46, ¶23, 381 Wis. 2d 349, 912 N.W.2d 35. "Judgment on the pleadings is proper only if there are no genuine issues of material fact." *Id.*

¶12    In order to state a claim for breach of contract, a plaintiff must allege the existence of an enforceable contract. *See Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582. In evaluating whether an enforceable contract was formed, we examine whether the terms of the alleged contract are "definite as to the parties' basic

commitments and obligations." ***Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.***, 206 Wis. 2d 158, 178, 557 N.W.2d 67 (1996). "A contract must be definite and certain as to its basic terms and requirements to be enforceable." ***Metropolitan Ventures, LLC v. GEA Assocs.***, 2006 WI 71, ¶22, 291 Wis. 2d 393, 717 N.W.2d 58. Additionally, a contract is illusory and unenforceable where the contract is conditional on some fact or event that is wholly under one party's control and their bringing it about is left solely to their discretion. ***Id.*** at ¶33. Whether an enforceable contract was formed is a question of law that we review de novo. ***Id.*** at ¶22.

¶13 In his amended complaint, Johnson alleged that by signing the Agreement, the Defendants agreed to provide "mental health treatment," "care," and "medical treatment" until he was no longer a danger to himself or others. Johnson alleged that the Agreement constituted a promise that the Defendants would protect Johnson from harming himself. Johnson argues that these promises were breached when the Defendants discontinued 1:1 monitoring and allowed Johnson unsupervised access to a pair of surgical scissors.

¶14 We disagree with Johnson and conclude, as did the circuit court, that the Agreement is too indefinite and uncertain to form an enforceable contract. Considering both the language of the Agreement and the surrounding circumstances, it is clear that the Agreement is an application for admission to MHC under WIS. STAT. § 51.10, the statute governing the voluntary admission of adults to an approved inpatient treatment facility.

¶15 First, by its title and language, the Agreement is undoubtedly an application for admission to MHC. The Agreement's title refers to the document as a "voluntary application and treatment agreement," and the first sentence

acknowledges that applicants, believing their condition may be helped by inpatient psychiatric treatment, "make application for voluntary admission to the Milwaukee County Health division." Whether to actually admit Johnson is within the sole discretion of MHC. *See Metropolitan Ventures*, 2006 WI 71, ¶33.

¶16 Additionally, the plain language of the Agreement contains no reasonably definite or certain promises between Johnson and MHC. While the first paragraph purports to bind Johnson to participate in the evaluation/treatment plan that MHC might develop for him if he is admitted, the Agreement also contains an acknowledgement of his rights under WIS. STAT. § 51.10(5)(c): that he can terminate treatment and leave the facility at will upon request unless he is determined by the treatment director to be dangerous and a statement of emergency detention is filed. *Id.* These are not reasonably definite or certain contract terms for mental health care. Rather, they are recitals and acknowledgements of the statutory requirements for voluntary admission to MHC under § 51.10 and the statutory rights and obligations of both Johnson and MHC under § 51.10(5)(c). That is, even if the Agreement did not state it, Johnson would still have a statutory right to terminate treatment at will, and MHC would still have the statutory obligation to detain him if certain statutory factors were met. These rights and obligations stem from § 51.10, not the Agreement.

¶17 Johnson argues that the parties contracted for reasonable mental health treatment to protect Johnson from his known ideations of self-harm and for a specifically tailored treatment plan to be implemented, but nothing in the Agreement states this. The Agreement does not address the condition for which Johnson was to be admitted or treated. There is no medication or therapy plan. There is no discrete treatment or procedure prescribed. The Agreement does not set forth any independent obligations for the Defendants. Nothing written in the

Agreement implies that the parties understood each other to be undertaking any specific obligations aside from potentially admitting Johnson to MHC. There were no reasonably certain promises made between the parties. Therefore, the Agreement is not an enforceable contract.[3]

¶18     Johnson also argues that the circuit court erred when it dismissed his breach of contract claim as duplicative of his negligence claims because, at the pleading stage, he is allowed to plead a medical malpractice claim as both a negligence and a breach of contract claim. Doing so at the pleading stage, Johnson argues, does not result in double recovery. While it is true that medical malpractice actions in Wisconsin may sound in either tort or contract, *McMahon v. Brown*, 125 Wis. 2d 351, 353, 371 N.W.2d 414 (Ct. App. 1985), and double recovery on the same set of facts is generally prohibited, *Wills v. Regan*, 58 Wis. 2d 328, 345, 206 N.W.2d 398 (1973), we need not reach this issue because the Agreement is not an enforceable contract upon which a breach of contract claim can be based.

¶19     In sum, we conclude that the Agreement is too indefinite and uncertain to form an enforceable contract. Johnson did not state a valid claim for breach of contract, and accordingly, we affirm the circuit court's order.

*By the Court.*—Order affirmed.

---

[3] Johnson also argues that the circuit court improperly characterized his breach of contract claim as alleging a "contract to cure." *See VanHierden v. Swelstad*, 2010 WI App 16, 323 Wis. 2d 267, ¶10, 779 N.W.2d 441. Because we conclude that the Agreement is not an enforceable contract, we need not resolve this issue.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.